Ramin **FIROOZYE, Plaintiff,**

v.

**EARTHLINK NETWORK, Defendant.**

No. C 01–02122 CRB.

United States District Court,
N.D. California.

July 31, 2001.

Rod Firoozye, Palo Alto, CA, pro se.

Albert P. Bedecarre, Quinn, Emanuel, Urquhart, Oliver & Hedges, San Francisco, CA, Warrington S. Parker, III, Quinn, Emanuel, Urquhart, Oliver & Hedges, Los Angeles, CA, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFF'S CROSS–MOTION TO REMAND

BREYER, District Judge.

Now before the Court are the defendants' motion to dismiss and the plaintiff's cross-motion to remand. Having carefully considered the parties' papers, and with the benefit of oral argument on July 27, 2001, the defendants' motion to dismiss is hereby GRANTED IN PART and DENIED IN PART, and the plaintiff's cross-motion to remand is hereby GRANTED.

### BACKGROUND

Beginning in April 1998, the plaintiff Ramin Firoozye, operating his own business known as Wizen Software ("Wizen"),[1] performed contract work for the defendant EarthLink Network, Inc., operating in California as EarthLink–Mindspring, Inc. (collectively, "EarthLink"). Prior to his association with EarthLink, Firoozye had developed a computer software program known as WebStash, which was designed to increase the speed with which an Internet user could browse a company's web site by storing frequently used media such as images or program snippets from the web site on the user's hand drive, thereby eliminating the need to download the image every time the user visits the web site. The program stores the media in the

---

1. The Court will use the term "the plaintiff" to refer to Firoozye and Wizen collectively unless indicated otherwise.

user's hard drive inside a secure browser cache area called a "stash."

As part of his work for EarthLink, Firoozye regularly submitted "crippled" versions of WebStash to EarthLink that only permitted a small number of entries inside the cache so that EarthLink could evaluate the program and decide whether to include it in a software package known as the EarthLink 5.0 CD that EarthLink was planning to distribute. In September 1999, the defendant Ranbir Chawla, Earth-Link's director of web development, allegedly told the plaintiff that EarthLink had completed its evaluation of WebStash and had decided that it wanted to include the program on the EarthLink 5.0 CD. Chawla then asked the plaintiff to send an enabled version of WebStash to EarthLink right away so that the company could fully test the program and include it in the Earth-Link 5.0 CD, which was scheduled for distribution shortly.

Firoozye claims that he told Chawla that he was uncomfortable sending a complete version of WebStash since EarthLink had not yet executed a formal licensing agreement with him. However, Firoozye alleges, Chawla indicated that EarthLink needed the program as soon as possible so as not to delay the production of the Earth-Link 5.0 CD and expressly assured him that EarthLink would sign a license agreement before it incorporated WebStash into its software package. As a result, on September 23, 1999, the plaintiff e-mailed a fully operational version of WebStash to EarthLink. In an e-mail Firoozye sent on the same day, the plaintiff requested that EarthLink not include WebStash in the EarthLink 5.0 CD until the licensing agreement could be executed:

> Ranbir also asked me to send down the non-eval *full* version of WebStash this time, meaning the one that doesn't have the 30–item limit per stash. EarthLink doesn't have a license for distributing WebStash yet, but in order to make sure you get your work done I am sending down the full version. Please make sure it doesn't make it into the final build until all licensing issues have been finalized.

Compl., Apr. 23, 2001, Ex. D. Firoozye also submitted a price list and a proposed license agreement along with the e-mail and the software. See id., Ex. B (containing the price list); id. Ex. C (containing the proposed license agreement).

EarthLink did not distribute the Earth-Link 5.0 CD for several months. The plaintiff alleges that Chawla repeatedly assured him that EarthLink's software package had fallen behind schedule and that EarthLink would formalize a license agreement with him before it used Web-Stash in the EarthLink 5.0 CD. In June 2000, however, Firoozye received a copy of the EarthLink 5.0 CD in the mail and observed that it contained the fully enabled version of WebStash, even though EarthLink had not paid the plaintiff or entered into any license agreement with him. Moreover, EarthLink's software package did not mention the plaintiff's company or include any documentation regarding EarthLink's use of WebStash.

As a result, on April 23, 2001, the plaintiff filed the present complaint in state court, alleging that EarthLink and Chawla had effectively entered into an oral contract with Firoozye to pay him in exchange for the right to incorporate Web-Stash into the EarthLink 5.0 CD and that the defendants had breached that contract by including the program without paying Firoozye or obtaining a formal license. The complaint contains thirteen causes of action, including: (1) breach of contract; (2) breach of implied contract and promissory estoppel; (3) breach of contract under California Civil Code 1584; (4) a request for an accounting; (5) intentional

misrepresentation and fraud; (6) negligent misrepresentation and failure to disclose; (7) misappropriation of trade secrets; (8) conversion; (9) involuntary trust of wrongful gain; (10) unjust enrichment; (11) unfair competition and unfair practices in violation of California Business & Professions Code §§ 17000 *et seq.;* (12) a request for declaratory relief; and (13) a request for an injunction. On May 31, 2001, the defendants removed the complaint to this Court.

## DISCUSSION

The defendants have now moved to dismiss the plaintiff's complaint, asserting that all of the plaintiff's causes of action are preempted under the federal Copyright Act of 1976 ("the Copyright Act" or simply "the Act"), 17 U.S.C. §§ 101 *et seq.* The plaintiff has cross-moved to remand, arguing that his claims are not preempted and that this Court consequently lacks subject matter jurisdiction over his complaint. Because the plaintiff's motion implicates this Court's subject matter jurisdiction, the Court will consider the propriety of removal before evaluating the defendants' preemption arguments.

## I. LEGAL STANDARDS

### A. Motion to Remand for Lack of Subject Matter Jurisdiction

Under 28 U.S.C. section 1441(a), a civil action brought in state court over which the federal district courts have original jurisdiction may be removed to the federal district court for the district embracing the place where the action is pending. *See* 28 U.S.C. § 1441(a). The federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

### B. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

A Rule 12(b)(6) motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997). Under Rule 12(b)(6), a complaint should not be dismissed unless a plaintiff can prove "no set of facts in support of his claim that would entitle him to relief." *Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). The court must take the non-moving party's factual allegations as true and must construe those allegations in the light most favorable to the non-moving party. *See id.* The court must also draw all reasonable inferences in favor of the non-moving party. *See Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987).

## II. WHETHER REMOVAL WAS PROPER

In the absence of diversity jurisdiction, a defendant may only remove a complaint filed in state court when "a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *see Harris v. Provident Life & Accident Ins. Co.,* 26 F.3d 930, 933–34 (9th Cir.1994) (quoting *Caterpillar* ). That rule, known as the "well-pleaded complaint rule," precludes a defendant from removing a complaint to federal court purely based on a federal defense to the plaintiff's state-law claims, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar,* 482 U.S. at 393, 107 S.Ct. 2425 (noting that the well-pleaded complaint

rule usually applies to a defense of pre-emption as well). Thus, where a defendant raises federal preemption as a defense to a state-law claim, that defense itself ordinarily does not raise a federal question and must be adjudicated in state court since the district court does not possess original jurisdiction.

■ However, there exists "an 'independent corollary' to the well-pleaded complaint rule ... known as the 'complete pre-emption' doctrine." *Id.* (citation to *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), omitted). Under the complete preemption doctrine, where a statute enjoys "extraordinary" or "unique pre-emptive force," the presence of a preemption defense under that statute converts "an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).[2] "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its incep-

tion, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425.

Under such extraordinary statutes, then, a district court does potentially possess subject matter jurisdiction over a removed complaint even where the federal question only arises in the context of a preemption defense. When presented with a removed complaint involving a defense under a statute that completely preempts state law, the court must decide whether any of the plaintiff's state-law claims are in fact preempted by the federal statute. If any state-law claim is preempted, the court has subject matter jurisdiction over the complaint and may permit the plaintiff to convert the preempted state-law claim to a federal claim arising under the preemptive statute. If none of the plaintiff's state-law claims is preempted by the federal law, however, then the plaintiff's complaint does not present a federal question, and the court must remand since it lacks subject matter jurisdiction. *See, e.g., Lyons v. Alaska Teamsters Employer Serv. Corp.*, 188 F.3d 1170, 1171–72 (9th Cir.1999).[3]

---

**2.** The Supreme Court has found complete preemption in the context of only two statutes: the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). *See Strong v. Telectronics Pacing Sys., Inc.*, 78 F.3d 256, 259 (6th Cir.1996) (citing *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 560, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), and *Metropolitan Life Ins. Co.*, 481 U.S. at 63–67, 107 S.Ct. 1542); *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 231 n. 4 (4th Cir.1993) (same). The Court has also found complete preemption in the context of state-law claims asserting ownership of Native American tribal land. *See Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 675–78, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).

**3.** It is important to note that when a federal court initially performs its analysis with re-

spect to whether a plaintiff's state-law claim is preempted under a completely preemptive federal statute, it does so purely for jurisdictional purposes. In other words, if the district court determines that at least one of the plaintiff's state-law claims is preempted, then the court has subject matter jurisdiction and has at the same time adjudicated the merits of the defendant's preemption defense. By contrast, if the court determines that none of the plaintiff's state-law claims is preempted by the statute and the court therefore remands the action to state court, then the federal court's conclusion that the plaintiff's state-law claims are not preempted—an assessment which was made purely for jurisdictional purposes—is not binding on the state court. *See id.* at 1172 & n. 1 ("However, the preemption determination made for purposes of determining jurisdiction has no bearing on whether the defendant can actually establish a substantive preemption defense.").

Thus, this Court must first determine whether the Copyright Act completely preempts state-law causes of action seeking to enforce the same rights protected by the Act. If the Act does not qualify under the complete preemption doctrine, then no federal question arises on the face of this plaintiff's well-pleaded complaint; this Court would lack subject matter jurisdiction over the case and would be compelled to remand the action to state court. If, on the other hand, the Act possesses the same extraordinary preemptive force as ERISA and LMRA, then the plaintiff's complaint potentially raises a federal question for purposes of the well-pleaded complaint rule. This Court would then need to evaluate whether any of the plaintiff's claims are in fact preempted under the Act to see whether it may exercise jurisdiction over the complaint.

In evaluating whether the preemption provision of the Copyright Act qualifies as a unique preemptive statute, the decision by the U.S. Court of Appeals for the Fourth Circuit in *Rosciszewski v. Arete Associates, Inc.*, 1 F.3d 225 (4th Cir.1993), is particularly instructive. In *Rosciszewski*, as here, the plaintiff had filed a complaint in state court alleging violations of state law, and the defendant had removed the action to federal court. *See* 1 F.3d at 228. The plaintiff then moved to remand the action to state court, arguing that the federal district court lacked subject matter jurisdiction, and the defendant moved to dismiss certain causes of action as preempted by the Copyright Act. *See id.*

In deciding whether the complete preemption doctrine applied, the *Rosciszewski* court focused on Congress's intent in enacting the Copyright Act, noting that the Supreme Court cases involving complete preemption had viewed the legislative history of the respective statutes as a critical element of the preemption analysis. *See id.* at 231. In the Fourth Circuit's view, two statutory provisions demonstrated Congress's intent to completely preempt state copyright law: the Act's preemption provision, 17 U.S.C. section 301(a), and the jurisdictional statute relating to copyright actions, 28 U.S.C. section 1338(a).

First, the preemption provision of the Act, 17 U.S.C. section 301(a), is very broad:

> On an after January 1, 1978, all legal or equitable rights that are equivalent˙ to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). While the language of section 301 is quite clear, Congress also reinforced its desire to sweep broadly in a report accompanying the legislation: "The declaration ... in section 301 is intended to be stated in the clearest and most unequivocal language possible, so as to foreclose any conceivable misinterpretation of its unqualified intention that Congress shall act preemptively, and to avoid the development of any vague borderline areas between State and Federal protection." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 130 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5746 (quoted in *Rosciszewski*, 1 F.3d at 232). "Thus, Congress has clearly indicated that state-law claims which come within the subject matter of copyright law and which protect rights equivalent to any of the exclusive rights within the scope of federal copyright law ... should be litigat-

ed only as federal copyright claims." *Rosciszewski,* 1 F.3d at 232.

Second, Congress vested federal district court with exclusive jurisdiction over copyright actions. *See* 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to ... copyrights ... Such jurisdiction shall be exclusive of the courts of the states in ... copyright cases."). By contrast, in actions under ERISA and LMRA, Congress only conferred concurrent jurisdiction. *See Rosciszewski,* 1 F.3d at 232. "[W]e view the grant of exclusive original jurisdiction over copyright claims to the district courts as strong evidence that Congress intended copyright litigation to take place in federal courts." *Id.* "[C]ombined with the preemptive force of section 301(a)," the Fourth Circuit concluded, the grant of exclusive jurisdiction to the federal district courts "compels the conclusion that Congress intended that state-law actions preempted by § 301(a) of the Copyright Act arise under federal law." *Id.* As a result, "the preemptive force of § 301(a) of the Copyright Act transforms a state-law complaint asserting claims. that are preempted by § 301(a) into a complaint stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 232–33.

Numerous district courts in California and elsewhere have concurred with the *Rosciszewski* analysis. *See, e.g., Metrano v. Fox Broadcasting, Co., Inc.,* 2000 WL 979664, at *3 (C.D.Cal.) ("Accordingly, state claims that are equivalent to federal copyright claims are completely preempted by the Copyright Act."); *Information Handling Servs., Inc. v. LRP Publica-*

tions, Inc., 2000 WL 433998, at *4 (E.D.Pa.) ("Finally, other courts that have considered the issue have found the Copyright Act to be completely preemptive."); *Worth v. Universal Pictures, Inc.,* 5 F.Supp.2d 816, 821 (C.D.Cal.1997) ("Complete preemption has been found for claims brought under the Copyright Act."); *Dielsi v. Falk,* 916 F.Supp. 985, 993 (C.D.Cal. 1996) ("Although there is no Ninth Circuit authority on point, a common law claim preempted by federal copyright law is clearly *completely* preempted under these principles.") (emphasis in original); *Wharton v. Columbia Pictures Indus., Inc.,* 907 F.Supp. 144, 146 (D.Md.1995) (following *Rosciszewski* ); *Patrick v. Francis,* 887 F.Supp. 481, 485 (W.D.N.Y.1995) (same).

The Court could only identify one opinion concluding that the Copyright Act does not completely preempt state law in the area such that removal of a state-law complaint is improper under the well-pleaded complaint rule.[4] *See Crooks v. Certified Computer Consultants, Inc.,* 92 F.Supp.2d 582, 587 (W.D.La.2000) ("Moreover, the complete preemption doctrine does not apply in the area of copyright, as not every case involving federal copyright laws arises under those laws such that federal jurisdiction is proper."). However, that decision is not particularly persuasive for three reasons. First, the *Crooks* court oversimplified the preemption question. That the Act does not preempt all state-law claims does not mean that the Act does not completely preempt state law in the area of copyright. After all, section 301(a) only preempts state-law claims where the work involved falls within the general subject matter of the Copyright Act *and* the rights that the plaintiff as-

---

4. Several opinions have cited *Rosciszewski* but have declined to decide whether the Copyright Act completely preempts state-law claims since the claims at issue were not preempted by section 301. *See, e.g., Lattie v.* *Murdach,* 1997 WL 33803, at *6 (N.D.Cal.); *Gateway 2000, Inc. v. Cyrix Corp.,* 942 F.Supp. 985, 995 (D.N.J.1996); *Enhanced Computer Solutions, Inc. v. Rose,* 927 F.Supp. 738, 739 n. 1 (S.D.N.Y.1996).

serts under state law are equivalent to those protected by the Act. *See* § 301(a); Section III *infra* (evaluating the preemptive scope of section 301(a) in more detail). Thus, there are circumstances where a state-law claim does involve the general subject matter of the Act but creates rights that are not equivalent to those protected by the Act, and those claims are not preempted. That does not mean, however, that the Copyright Act does not completely preempt other state-law claims; it only means that certain insufficiently equivalent state-law claims do not fall within the scope of the Act's complete preemption, just as not all claims involving labor-management relations are preempted under LMRA and not all claims involving employee benefits are preempted under ERISA. Second, the *Crooks* court failed to evaluate Congress's preemptive intent in enacting section 301, thereby overlooking the critical factor in conducting a complete preemption analysis. Indeed, it is somewhat telling that the Crooks court did not cite *Rosciszewski* in determining whether the Act completely preempts state law. Third, *Crooks* relied on *Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926 (2d Cir.1992), which was abrogated by the Second Circuit in *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 352 (2d Cir.2000) ("We believe for a number of reasons that the *Schoenberg* test is unworkable.").

The plaintiff also cites *Topolos v. Caldewey*, 698 F.2d 991 (9th Cir.1983), for the proposition that a federal court does not possess subject matter jurisdiction over a copyright claim where the claim is essentially for a naked declaration of ownership or contractual rights, even if the claim incidentally involves a copyright. *See* 698 F.2d at 993 (quoting *Royalty Control Corp. v. Sanco, Inc.*, 1972 WL 17732, 175 U.S.P.Q. 641, 642 (N.D.Cal.1972)). However, the Ninth Circuit went on to note that ownership of a copyright is always a threshold question in copyright suits; "[o]nly when such ownership is the *sole question* for consideration are federal courts without jurisdiction." *Id.* at 994 (emphasis added). Here, as in *Topolos*, the potential ownership of a copyright in WebStash is not the only issue involved in the litigation. Instead, this Court would also have to decide whether the plaintiff is entitled to copyright protection, whether there was any infringement of the copyright, and other issues under the Act. *See id.* (outlining additional issues that gave the district court jurisdiction over the claim). Moreover, the *Topolos* court did not consider whether the Copyright Act completely preempted state law, nor didn't consider the contours of a district court's jurisdiction in the context of a removed complaint where the defendant raised a preemption defense. As a result, it is of little value in resolving the present motions.

■ Thus, this Court concludes that the Copyright Act completely preempts state-law claims within the scope of section 301. Accordingly, if any of the plaintiff's claims are preempted under the Copyright Act, those preempted claims must be viewed as involving federal questions for the purpose of the well-pleaded complaint rule. This Court would then possess subject matter jurisdiction over the entire complaint, thereby requiring the Court to deny the plaintiff's motion to remand. On the other hand, if none of the plaintiff's claims is preempted, the face of the plaintiff's well-pleaded complaint would not arise under federal law and this Court would not have jurisdiction, compelling remand to state court.

## III. WHETHER THE PLAINTIFF'S CLAIMS ARE PREEMPTED

■ A plaintiff's state-law cause of action is preempted under 17 U.S.C. section

301(a) if: (1) the work involved falls within the general subject matter of the Copyright Act as specified by sections 102 and 103; and (2) the rights that the plaintiff asserts under state law are equivalent to those protected by the Act in section 106 in works of authorship that are fixed in a tangible medium of expression. *See* 17 U.S.C. § 301(a) (quoted *supra* ); *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir.1998); *Valente–Kritzer Video v. Pinckney*, 881 F.2d 772, 776 (9th Cir. 1989); *Del Madera Properties v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. 1987).

### A. Whether the Software Falls Within the Subject Matter of Copyright

■ To succeed in its motion to dismiss, the defendants first must establish that the WebStash software program "come[s] within the subject matter of copyright as specified by sections 102 and 103."[5] 17 U.S.C. § 301. WebStash does not necessarily have to be actually protected by a specific copyright or even itself be copyrightable; it just has to be "within the subject matter" of the Act. *See Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 455 (6th Cir.2001) ("We join our sister circuits in holding that the scope of the Copyright Act's subject matter is broader than the scope of the Act's protections."); *id.* at 454 ("[T]he scope of the Copyright Act's subject matter extends beyond the tangible expressions that can be protected under the Act to elements of expression which themselves cannot be protected.").

There is little doubt that computer programs are eligible for copyright protection in certain circumstances. *See Johnson Controls, Inc. v. Phoenix Control Sys.*, 886 F.2d 1173, 1175 (9th Cir.1989) ("Computer software is subject to copyright protection."); *id.* ("Whether a particular component of a program is protected by a copyright depends on whether it qualifies as an 'expression' of an idea, rather than the idea itself."); 1 *Nimmer on Copyright* § 2.04[C], at 2–51 to 2–52 (2001) (noting that the legislative history of the Act itself demonstrates that computer programs are within the subject matter of copyright and that subsequent amendments to the Act dispelled any "lingering doubts as to the copyrightability of computer programs"). Even if a particular piece of software is not copyrightable because it represents an idea itself rather than the expression of an idea, it is clear that computer programs in general come within the subject matter of copyright. After all, the subject matter of copyright is broader than the Act's protections, so material that falls within a category that is eligible for protection in certain

---

5. Section 102 provides:
 (a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories: (1) literary works; (2) musical works, including any accompanying words; (3) dramatic works, including any accompanying music; (4) pantomimes and choreographic works; (5) pictorial, graphic, and sculptural works; (6) motion pictures and other audiovisual works; (7) sound recordings; and (8) architectural works.
 (b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102. Section 103 extends the subject matter in section 102 to compilations and derivative works but limits the scope of such protection where there is preexisting material within the compilation. *See* 17 U.S.C. § 103.

instances must come within the Act's subject matter. *See Wrench*, at 454–55 (noting that the subject matter of copyright extends beyond tangible, protectable expressions).

It is unclear whether the plaintiff seriously disputes that contention. He concedes that "the legislative history of Section 102(a) suggests that computer programs are considered copyrightable as literary works," Consolidated [Amended] Mot. to Remand and Opp'n to Mot. to Dismiss ("Opposition"), July 5, 2001, at 10, and reserves the right to argue that the program is subject to copyright protection, *see id.* at 11, but then argues that the defendants have "failed to meet their burden that this particular program should be subject to copyright protection" because the program might constitute a form of ideas rather than a form of expression. *Id.* Whether this particular piece of software is copyrightable is not the relevant question, however. Instead, the issue for the purpose of a preemption analysis is whether the work involved is a kind of work that comes within the subject matter of the Copyright Act. Even uncopyrightable ideas that are part of copyrighted works come within the subject matter of copyright. *See Wrench*, at 454 (citing *United States ex rel. Berge v. Board of Trustees of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir.1997)). Given that the subject matter of copyright is broader than copyright protection and the existence of clear Ninth Circuit authority that computer programs are eligible for copyright protection, this Court must conclude that the defendants have established that the computer software at issue here comes within the subject matter of copyright for the purpose of a section 301(a) preemption analysis.

## B. Whether the Plaintiff's Claims are Equivalent to the Copyright Act

Having established that the work involved falls within the general subject matter of the Copyright Act as specified by sections 102 and 103, the defendants must also show that the rights that the plaintiff asserts under state law are equivalent to those protected by the Act in section 106 in works of authorship that are fixed in a tangible medium of expression.[6] To determine whether a plaintiff's state-law claim seeks to assert rights that are equivalent to those protected by the Copyright Act, a court must analyze the elements of the state-law cause of action to see if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights in the Act. Conversely, if there is an "extra element" that is required in place of or in addition to the acts of reproduction, performance, distribution, or display in order to constitute a state-law cause of action, and the "extra element" required by state law changes the nature of the action so that it is qualitatively different from a copyright infringement claim, the state-law claim is not preempted. *See Wrench*, at 455; *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1439–40 (9th Cir.1993) (quoting *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal.App.3d 1327, 1340, 267 Cal.Rptr. 787 (1990)); *Rosciszewski*, 1 F.3d at 229–30; *Del Madera*, 820 F.2d at 977. Generally speaking, the defendant's allegedly wrongful intent "does not add an element qualitatively changing the state

---

**6.** Section 106 establishes the exclusive rights vested in the owner of a copyrighted work, including the exclusive rights to reproduce the work, prepare derivative works, distribute copies of the work to the public, and to perform or display the work publicly. *See* 17 U.S.C. § 106.

claim from one of unauthorized copying ...." *Rosciszewski,* 1 F.3d at 230.

Thus, for each cause of action, the Court must evaluate whether the plaintiff's state-law claims are equivalent (*i.e.,* do not require the proof of an additional element) to protections under the Act and are therefore preempted. Because some of the causes of action raise similar issues, the Court will address the claims in the following order: (1) the plaintiff's breach of contract claims (the first and third causes of action), the breach of implied contract and promissory estoppel claim (the second cause of action), and the unjust enrichment claim (the tenth cause of action); (2) the plaintiff's misrepresentation claims (the fifth and sixth causes of action); (3) the plaintiff's conversion claim (the eighth cause of action); (4) the plaintiff's misappropriation of trade secrets claim (the seventh cause of action); (5) the plaintiff's unfair competition claim (the eleventh cause of action); and (6) the plaintiff's causes of action seeking relief under other claims (the fourth, ninth, twelfth, and thirteenth causes of action).

### 1. The Contract Claims (the First, Second, Third, and Tenth Causes of Action)

In the defendants' view, the plaintiff's various breach of contract claims are all preempted by the Act since the plaintiff merely alleges that the defendants promised not to use WebStash without his permission. As a result, the defendants contend, the plaintiff at most alleges that the defendants violated his exclusive right to reproduce and distribute the software, thereby making his claims equivalent to an action for copyright infringement. Where a plaintiff's breach of contract claim only asserts that a defendant violated a promise not to use a certain work, that breach of contract claim is preempted. *See, e.g., Wrench,* at 457–59 (noting that a state-law breach of contract claim is preempted if

the contract contains only a bare promise not to violate the Copyright Act, such as if the promise "only amounts to a promise to refrain from reproducing, performing, distributing or displaying the work ..."); *Selby v. New Line Cinema Corp.,* 96 F.Supp.2d 1053, 1061–62 (C.D.Cal.2000) (noting that the defendants' "alleged promise not to 'use' plaintiff's ideas does not prohibit any conduct beyond that prohibited by the Copyright Act"); *id.* at 1062 (citing *Endemol Entertainment B.V. v. Twentieth Television, Inc.,* 1998 WL 785300, 48 U.S.P.Q.2d 1524, 1528 (C.D.Cal. 1998)). Moreover, where the plaintiff's theory of relief is that the defendant has improperly benefitted from using a certain work and that a contract should be implied in law (*e.g.,* a quasi-contract, quantum meruit, or unjust enrichment claim), such claims are preempted. *See Wrench,* at 457–59 (noting that an action asserting an implied-in-law contract is preempted by the Act); *Del Madera,* 820 F.2d at 977 ("But an implied promise not to use or copy materials within the subject matter of copyright is equivalent to the protection provided by section 106 of the Copyright Act. Therefore, this portion of [the plaintiff's] unjust enrichment claim is also preempted.").

The defendants, however, have read the plaintiff's complaint too narrowly. The plaintiff has not merely claimed that the defendants unfairly benefitted from their unauthorized use of WebStash or that the defendants promised the plaintiff that they would not use the software without his permission and that a court should therefore find a contract implied in law. He is also alleging that the defendants' conduct—incorporating WebStash into the EarthLink 5.0 CD after receiving the plaintiff's proposed license agreement and price sheet—demonstrated an intent to form a contract and that a contract was therefore implied in fact. *See* Compl.

¶ 72 ("Defendants and each of them incorporated WebStash Program on their EARTHLINK 5.0 CD, thereby accepting the consideration offered with the proposal, constituting an acceptance of the offer."). The plaintiff alleges that he e-mailed a copy of his price list for Web-Stash to Chawla as early as May 1999 and again in September 1999 when he submitted the fully enabled version of WebStash. *See id.* ¶ 28 (May 1999); ¶ 36 (September 1999); *id.* Ex. B (containing the price list). "After requesting justification for plaintiff's price list, Chawla informed plaintiff that the price was satisfactory and that he would pass along the package to EARTHLINK management and request that EARTHLINK's 'licensing team' complete a formal licensing agreement." *Id.* ¶ 29. Further, the plaintiff contends that Chawla repeatedly indicated that the plaintiff would be paid for the use of WebStash in the EarthLink 5.0 CD and that Earth-Link intended to execute a formal licensing agreement with him in the near future. *See id.* ¶¶ 34, 35, 38. Moreover, the plaintiff's complaint makes it clear that he does not regard EarthLink's breach of contract as being limited to its use of WebStash without his consent; he also claims that the defendants promised to pay him for the use of the software but did not. *See id.* ¶¶ 54 (first cause of action), 59 & 65 (second cause of action), 72 (third cause of action).

Given those allegations, it is clear that the plaintiff's first, second, and third causes of action allege a breach of an implied-in-fact contract. "For the purpose of the preemption analysis, there is a crucial difference between a claim based on quasi-contract, i.e., a contract implied in law, and a claim based upon a contract implied in fact." *Wrench,* at 458–59; *see* 4 *Nimmer on Copyright* § 16.03, at 16–10 to 16–11 (describing the importance of distinguishing between an implied-in-fact contract and an implied-in-law contract for the

purposes of a preemption analysis). That crucial difference is the additional element of the defendants' promise to pay the plaintiff for the software. A promise to pay for a work constitutes an extra element such that a breach of contract claim is not preempted by section 301. "It is not the use of the work alone but the failure to pay for it that violates the contract and gives rise to the right to recover damages." *Wrench,* at 456–57 ("The extra element is the promise to pay. This extra element does change the nature of the action so that it is qualitatively different from a copyright infringement claim."); *id.* at 458–59 ("Thus, an action based on a contract implied in law requires no extra element in addition to an act of reproduction, performance, distribution or display, whereas an action based on a contract implied in fact requires the extra element of a promise to pay for the use of the work which is implied from the conduct of the parties.").

In addition, a state law creating a cause of action for the breach of an implied-in-fact contract is "not abridged by an act which in and of itself would infringe one of the exclusive rights granted by § 106, since the right to be paid for the use of the work is not one of those rights." *Id.* at 456–57. Moreover, a plaintiff seeking to establish that a defendant breached an implied-in-fact contract would also have to prove elements beyond unauthorized use, including that the defendant made an enforceable promise to pay and breached that promise. *See id.* (outlining the additional elements required in an implied-in-fact contract claim). Indeed, because many breach of contract claims allege that a defendant breached a promise to pay the plaintiff for its use of the work, "the vast majority of contract claims will presumably survive scrutiny" under a section 301 preemption analysis. 1 Nimmer on Copyright § 1.01[B][1][a], at 1–22; *see Selby,* 96

F.Supp.2d at 1059 ("[A] majority of courts have found that breach of contract claims generally are not preempted.").

Thus, the plaintiff's first, second, and third causes of action for breach of contract and promissory estoppel involve an additional element—a promise to pay the plaintiff for his software—that qualitatively changes the nature of the claims so that they are not equivalent to a claim for copyright infringement involving only a promise not to use the program. As a result, those state-law claims are not preempted. However, the plaintiff's unjust enrichment claim, which at its core alleges that the defendants unfairly benefitted from their unauthorized use of Web-Stash, is equivalent to the rights protected in section 106 of the Copyright Act and is therefore preempted. Accordingly, the defendants' motion to dismiss the plaintiff's first, second, and third causes of action for breach of contract and promissory estoppel must be DENIED, but the defendants' motion to dismiss the plaintiff's tenth cause of action for unjust enrichment must be GRANTED. The plaintiff's tenth cause of action is therefore dismissed without prejudice.

### 2. The Misrepresentation Claims (the Fifth and Sixth Causes of Action)

■ The elements for a claim for intentional misrepresentation are that: (1) the defendant made a misrepresentation, including a false representation, concealment, or nondisclosure; (2) the defendant had knowledge that the statement was false; (3) the defendant acted with intent to defraud or induce reliance; (4) the plaintiff justifiably relied on the defendant's statement; and (5) the plaintiff was damaged by that reliance. *See Design Art v. National Football League Properties, Inc.*, 2000 WL 33151646, at *5 (S.D.Cal.) (citing *Molko v. Holy Spirit Ass'n*, 46 Cal.3d 1092, 1108, 252 Cal.Rptr. 122, 762

P.2d 46 (1988)). The elements for a claim for negligent misrepresentation are similar; the plaintiff must show that the defendant made a misrepresentation without reasonable grounds for believing it to be true and that the representation was intended to induce the plaintiff to take some action in reliance upon it. *See id.* (citing *B.L.M. v. Sabo & Deitsch*, 55 Cal.App.4th 823, 834, 64 Cal.Rptr.2d 335 (1997)).

■ The element of misrepresentation or deception "is no part of a cause of action for copyright infringement" and is therefore not preempted. 1 *Nimmer on Copyright* § 1.01[B][1][e], at 1–27; *see Valente–Kritzer*, 881 F.2d at 776 (holding that an intentional misrepresentation claim "is not substantially equivalent to a claim for copyright infringement"); *id.* ("[T]wo district courts have held that common law fraud is not preempted by § 301 because the element of misrepresentation is present.... This conclusion appears to be consistent with congressional intent.") (citing *Tracy v. Skate Key, Inc.*, 697 F.Supp. 748, 751 (S.D.N.Y.1988), and *Brignoli v. Balch Hardy & Scheinman, Inc.*, 645 F.Supp. 1201, 1205 (S.D.N.Y.1986)); *Design Art*, 2000 WL 33151646, at *3 (discussing *Valente–Kritzer*).

The defendants cite *Design Art* for the principle that misrepresentation claims only include an additional element when the defendant's alleged misrepresentations involve a promise to perform a contract. *See Design Art*, 2000 WL 33151646, at *4 (distinguishing *Valente–Kritzer*). However, that decision was in fact more narrow than the defendants have urged for a variety of reasons. First, some of the misrepresentations that the plaintiffs alleged involved the defendants' statements to third parties. The court concluded that the plaintiffs had failed to state a claim for fraud or for intentional or negligent misrepresentation for those statements since

the plaintiffs could not have justifiably relied on statements to third parties; the court did not reach the preemption issue as to those third-party statements. *See id.* at 776. Second, the remainder of the plaintiffs' fraud claim was based purely on the defendants' knowing conversion of the plaintiffs' work and not on any false statements. *See id.* at 776. A conversion claim is not qualitatively different from a copyright claim, *see* Section III.B.3 *infra,* and a defendant's fraudulent or otherwise guilty intent itself does not constitute an extra element precluding preemption. *See Rosciszewski,* 1 F.3d at 230. Thus, a fraud claim based purely on acts of conversion does not contain an extra element precluding preemption.

Third, the court held that the plaintiffs' misrepresentation claims based on the defendants' alleged assurances to the plaintiffs that they would not use the work without permission were "preempted for the reason their fraud claim is preempted." *Design Art,* 2000 WL 33151646, at *5. However, while a conversion claim is not qualitatively different from a copyright claim, and a fraud claim based on conversion is not different merely because it adds an intent element, a misrepresentation claim requires proof of a false statement and is therefore qualitatively different. One might contend that a state-law claim alleging that a defendant misrepresented that it would not use a work without a plaintiff's permission is similar to a copyright claim alleging that the defendant used the work without the plaintiff's permission—which is apparently what the *Design Art* court concluded—but that argument ignores the important additional elements in a misrepresentation claim, including that the defendant made a false statement to the plaintiff with the intent to induce reliance and that the plaintiff justifiably relied on the statement. Thus, the *Design Art* decision is not as broad as the defendants suggest, and to the extent

that it held that a misrepresentation claim does not contain an extra element where the alleged statement involved one of the exclusive rights in section 106, it appears to have been in error. A state-law misrepresentation claim, even where the defendant's only alleged misrepresentation involved a promise not to use the plaintiff's work, contains an additional element that makes the claim qualitatively different from a copyright right claim and is therefore not preempted.

Besides, even if the *Design Art* court were correct that a misrepresentation claim only contains an additional element when the defendant misrepresents its intent to perform a contract, Firoozye's misrepresentation claims are still not preempted. The defendants claim that the only alleged misrepresentations at issue in the plaintiff's complaint are those relating to the defendants' alleged promise not to use WebStash without the plaintiff's permission. The defendants have again misread the complaint, in which the plaintiff clearly alleges that the defendants negligently or intentionally misrepresented their intent to enter into and perform a contract with him. *See* Compl. ¶¶ 34, 35, 38, 81–85, 96–99. Accordingly, the plaintiff's misrepresentation claims are not preempted, and the defendants' motion to dismiss the fifth and sixth causes of action must be DENIED.

**3. The Conversion Claim (the Eighth Cause of Action)**

 To state a claim for conversion under California law, a plaintiff must establish: (1) the plaintiff's ownership or right to possession of a certain piece of property; (2) the defendant's conversion of the property by a wrongful act or disposition of property rights; and (3) damages. *See Design Art,* 2000 WL 33151646, at *3 (citing *Burlesci v. Petersen,* 68 Cal.App.4th 1062, 1066, 80 Cal.Rptr.2d 704 (1998)). Similarly, to state a claim for misappropri-

ation under California common law, a plaintiff must establish three elements: (1) that the plaintiff has invested substantial time and money in the development of its property; (2) that the defendant has appropriated the property at little or no cost; and (3) that the plaintiff has been injured by the defendant's conduct. *See Summit,* 7 F.3d at 1441.

To some degree, claims for conversion of physical property or for misappropriation involve an extra element beyond unauthorized copying since they require a plaintiff to prove that the defendant wrongfully obtained possession over a specific piece of property. *See G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.,* 958 F.2d 896, 904 (9th Cir.1992); *Oddo v. Ries,* 743 F.2d 630, 635 (9th Cir.1984). However, while a claim for conversion typically involves tangible property and thus may be immune from preemption, where a plaintiff is only seeking damages from a defendant's reproduction of a work—and not the actual return of a physical piece of property—the claim is preempted. *See Worth,* 5 F.Supp.2d at 822–23 (finding that a conversion claim was preempted where the plaintiff did not allege that the defendant had failed to return actual physical works); *Dielsi,* 916 F.Supp. at 992 (holding that a claim for conversion of intangible property arising from the reproduction of the property "is clearly equivalent to a copyright claim"). Because claims involving the conversion or misappropriation of works within the subject matter of copyright typically seek damages for the unauthorized *reproduction* of the works and not just the unauthorized *possession* or use of a specific piece of property, "legions of cases ... have held pre-empted claims for misappropriation ..." 1 *Nimmer on Copyright* § 1.01[B][1][f], at 1–35; *see id.* § 1.01[B][1][h], at 1–40 (noting that where a state law does not require secrecy for a misappropriation claim, there is no additional element precluding preemption).

Here, the plaintiff is not seeking the return of a tangible piece of property. Indeed, the plaintiff sent WebStash to the defendants and authorized them to use it for their own evaluation, so he cannot claim that the defendants wrongfully obtained possession over that specific version of the program. Instead, the plaintiff is alleging that the defendants wrongfully *reproduced* WebStash without his permission, the essence of a claim for copyright infringement. *See Design Art,* 2000 WL 33151646, at *3 (finding a conversion claim preempted because the plaintiffs were essentially alleging that the defendants "interfered with plaintiffs' exclusive rights as the owner of the copyrights to the subject work"). Accordingly, the plaintiff's claim for conversion is preempted, and the defendants' motion to dismiss the plaintiff's eighth cause of action is GRANTED.

### 4. The Misappropriation of Trade Secrets Claim (the Seventh Cause of Action)

"Actions for disclosure and exploitation of trade secrets require a status of secrecy, not required for copyright, and hence, are not pre-empted. This conclusion follows whether or not the material subject to the trade secret is itself copyrightable." 1 *Nimmer on Copyright* § 1.01[B][1][h], at 1–39 to 1–40. If state law does not require secrecy, however, "the element distinguishing the state right from copyright would appear to evaporate, causing the state right thereby to be preempted." *Id.* at 1–40. Under California law, information must derive its economic value "from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use" and must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy" to qualify for trade secret protection. Cal. Civ.Code § 3426.1(d).

Thus, the plaintiff's misappropriation of trade secrets claim contains an extra element—that WebStash qualifies as a trade secret under section 3426.1—that makes the claim qualitatively different from a copyright infringement action. *See Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 660 (4th Cir.1993) ("We agree with the Second Circuit that the breach of a duty of trust or confidentiality comprises the core of actions for trade secret misappropriation, and 'supplies the "extra element" that qualitatively distinguishes such trade secret causes of action from claims for copyright infringement that are based solely upon copying.' ") (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir.1992)); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1090 n. 13 (9th Cir.1989) ("Since the California statute pleaded in this case [section 3426.1] does not involve a legal or equitable right equivalent to an exclusive right of a copyright owner under the Copyright Act, but only prohibits certain means of obtaining confidential information, its application here would not conflict with federal copyright law."). The defendants' contention that the plaintiff has failed to allege a confidential relationship and their citation to *Design Art* address the merits of the plaintiff's trade secret claim, not whether that claim is preempted by the Copyright Act. Accordingly, the plaintiff's claim is not preempted, and the defendants' motion to dismiss the plaintiff's seventh cause of action is DENIED.

### 5. The Unfair Competition Claim (the Eleventh Cause of Action)

■ The defendants have also moved to dismiss the plaintiff's eleventh cause of action alleging unfair competition under the California Business & Professions Code. That cause of action does not contain any additional substantive allegations and refers to the plaintiff's fifth through eighth causes of action for misrepresentation, misappropriation of trade secrets, and conversion.[7] To the extent the plaintiff's conversion claim is preempted, *see* Section III.B.3 *supra*, the plaintiff's unfair competition claim is preempted, and the defendants' motion to dismiss is GRANTED. However, the plaintiff's unfair competition claim is not preempted to the extent it is based on the misrepresentation and misappropriation of trade secret claims. *See* Section III.B.2 & 4 *supra*. To the extent the plaintiff's unfair competition claim relies on those causes of action, the defendants' motion is DENIED.

### 6. The Causes of Action Seeking Relief for Other Claims (the Fourth, Ninth, Twelfth, and Thirteenth Causes of Action)

Finally, the defendants contend that the plaintiff's causes of action seeking relief for other claims, including his request for an accounting (the fourth cause of action), his request for an involuntary trust of wrongful gain (the eleventh cause of action), his request for declaratory relief (the twelfth cause of action), and his request for an injunction (the thirteenth cause of action), are preempted for the same reasons that the plaintiff's underlying claims are preempted.

■ The plaintiff's request for an involuntary trust is similar to an unjust enrichment or conversion claim that the defendants impermissibly exercised ownership over the plaintiff's program and is therefore preempted. *See* Sections III.

---

7. In his opposition to the defendants' motion, the plaintiff claims that the defendants committed "palming off" by representing the EarthLink 5.0 CD as their own product when in fact it included the plaintiff's program, thereby engaging in an act of unfair competition. *See* Opposition at 18–19. The complaint does not contain sufficiently clear or similar allegations to warrant analysis at this time. *See* Compl. ¶¶ 40, 129.

B.1 (unjust enrichment) & III.B.3 (conversion) *supra.* Accordingly, the defendants' motion to dismiss the ninth cause of action for an involuntary trust must be GRANTED.

 However, the other causes of action requesting an accounting, declaratory relief, and an injunction request particular forms of relief for other causes of action. As a result, the defendants' motion to dismiss is GRANTED IN PART to the extent the claims arise from preempted state-law causes of action but DENIED IN PART to the extent the claims arise from state-law claims that are not preempted.

### CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is GRANTED IN PART with respect to the following claims:

1. the conversion claim (eighth cause of action);
2. the involuntary trust of wrongful gain claim (ninth cause of action); and
3. the unjust enrichment claim (tenth cause of action).

The plaintiff's eighth through tenth causes of actions are therefore dismissed without prejudice.

The defendants' motion to dismiss is DENIED IN PART with respect to the following claims:

1. the breach of contract claims (first and third causes of action);
2. the breach of implied contract and promissory estoppel claim (second cause of action);
3. the intentional misrepresentation claim (fifth cause of action);
4. the negligent misrepresentation claim (sixth cause of action); and

5. the misappropriation of trade secrets claim (seventh cause of action).

For the following claims, which either request certain forms of relief for or are based on other causes of action, the defendants' motion to dismiss is GRANTED IN PART to the extent the claims arise from preempted state-law causes of action and DENIED IN PART to the extent the claims arise from state-law claims that are not preempted:

1. the request for an accounting (fourth cause of action);
2. the unfair competition claim (eleventh cause of action);
3. the request for declaratory relief (twelfth cause of action); and
4. the request for an injunction (thirteenth cause of action).

 Finally, because three of the plaintiff's causes of action—the conversion claim (eighth cause of action), the involuntary trust of wrongful gain claim (ninth cause of action), and the unjust enrichment claim (tenth cause of action)—are preempted by the Act,[8] those claims must be regarded as arising under federal law for purposes of the well-pleaded complaint rule such that this Court possesses subject matter jurisdiction.

However, at oral argument, the plaintiff's counsel represented that the plaintiff will not seek to amend his complaint to convert his preempted state-law claims into federal copyright claims. As a result, his complaint as of the date of this Order only includes state-law causes of action, and no federal issue is present on the face of the plaintiff's well-pleaded complaint. This Court therefore declines to exercise supplemental jurisdiction over the remaining purely state-law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court

---

8. As noted *supra,* the plaintiff's fourth, eleventh, twelfth, and thirteenth causes of action are also preempted in part. Accordingly, these paragraphs apply to those causes of action to the extent that they are preempted and dismissed.

may decline to exercise supplemental jurisdiction over state-law claims if the court has dismissed all claims over which it has original jurisdiction). Accordingly, the plaintiff's motion to remand is GRANTED. The plaintiff's complaint—minus the preempted causes of action—shall be REMANDED to the state court in which the plaintiff originally filed the complaint.

IT IS SO ORDERED.