**VALENTE–KRITZER VIDEO,**
Plaintiff–Appellant,

v.

**Callan PINCKNEY; Callan Productions Corporation, Defendants–Appellees.**

No. 88–6247.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 1, 1989.

Decided Aug. 4, 1989.

Evan S. Cohen, Cohen and Luckenbacher, Los Angeles, Cal., for plaintiff-appellant.

James L. Seal, Rosenfeld, Meyer & Susman, Beverly Hills, Cal., for defendants-appellees.

Before SNEED, REINHARDT and BRUNETTI, Circuit Judges.

SNEED, Circuit Judge:

Valente–Kritzer Video (VKV) appeals from the grant of summary judgment in favor of Callan Pinckney and Callan Production Company (hereinafter collectively referred to as Pinckney) on the grounds that VKV's causes of action were preempted by § 204 and § 301 of the Copyright Act of 1976. We affirm in part and reverse in part.

## I.

## FACTS AND PROCEEDINGS BELOW

VKV produces video programming for sale and distribution. Callan Pinckney is the author of a best-selling book entitled *Callenetics*. In 1985, VKV offered to produce a home video based on Pinckney's book. VKV alleges that the parties entered into an oral agreement whereby VKV "was given the exclusive right to shop for a home video deal and to negotiate with major home video cassette manufacturer/distributors for the production and distribution of a home video based upon the book." VKV also asserts that the parties agreed that if VKV secured a producer, Pinckney agreed to transfer the right to co-produce, distribute, and sell the videocassette to VKV. Finally, VKV alleges that the parties agreed to divide the resulting royalties equally.

Pursuant to the agreement, VKV arranged with MCA Home Video, a nationally recognized producer of home videocassettes, to produce the video. Pinckney, however, refused to perform her part of

the agreement. Ultimately, Pinckney and MCA agreed to produce the videocassette which was a commercial success.

VKV then filed this action for breach of contract, tortious breach of contract, and fraud. Pinckney moved for summary judgement, arguing that the Copyright Act of 1976 preempted all of VKV's claims. *See* 17 U.S.C. §§ 204, 301 (1982). The district court agreed and VKV appeals. We shall address each of VKV's claims separately, and we affirm in part and reverse in part.

## II.

## JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1332(a) (1982). This court's jurisdiction rests on § 1291.

## III.

## STANDARD OF REVIEW

 We review the district court's grant of summary judgment de novo. *Lamothe v. Atlantic Recording Corp.*, 847 F.2d 1403, 1404 (9th Cir.1988). We will uphold summary judgment if, after viewing the evidence in the light most favorable to the opposing party, the movant is clearly entitled to prevail as a matter of law. *Id.*

## IV.

## ANALYSIS

### A. *Breach of Contract*

 We first address VKV's action for breach of contract. This claim encounters, as VKV concedes, the requirement that a contract transferring an exclusive license in a copyrighted work be in writing. 17 U.S.C. § 204(a)[1]; *see Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir.1982). The right to prepare a derivative work, such as a videocassette

based on a copyrighted book, is one of the exclusive rights comprised in a copyright. *See* 17 U.S.C. §§ 101, 106(2) (1982). Section 204(a) not only bars copyright infringement actions but also breach of contract claims based on oral agreements. *See, e.g., Liberty Publications, Inc. v. Medical Economics Co.*, 548 F.Supp. 1231, 1233 (E.D. Pa.1982), *aff'd*, 714 F.2d 123 (3d Cir.1983). Thus, VKV's breach of contract claim must fail.

### 1. Severability of the Promise to Transfer

To avoid this result, VKV attempts to sever the contract between the parties. The first part that calls for transferring an exclusive license in the copyrighted work, VKV admits, is unenforceable. The second part that promises a "finder's fee" if VKV obtained financing for the video production is enforceable, VKV argues. Promising a "finder's fee" is distinguishable from promising to transfer copyright ownership. Only the latter is covered by 17 U.S.C. § 204(a), VKV argues. VKV invokes California law to support its argument:[2]

> [i]f a claimant alleges two or more promises of performance "that can easily be distinguished and separated by the court by reference to the agreement itself" ..., only that promise of performance which falls clearly within the statute of frauds cannot be enforced.

*White Lighting Co. v. Wolfson*, 68 Cal.2d 336, 345, 438 P.2d 345, 350, 66 Cal.Rptr. 697, 702 (1968) (in bank) (quoting 2 A. Corbin, *Corbin on Contracts* § 133, at 127–28 (1964)); *accord Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1370 (9th Cir.1987). In *White Lighting*, an employer's promise to repurchase stock from an employee was severable from the employer's promise to reimburse expenses and to pay severance and the employer's share of gross receipts. 68 Cal.2d at 346,

---

1. The statute provides, in pertinent part:
 A transfer of copyright ownership ... is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed....

2. Because this is a diversity case, VKV asserts that the language of the contract should be interpreted under California law. *See Gulf Ins. Co. v. L.A. Effects Group, Inc.*, 827 F.2d 574, 576 (9th Cir.1987).

438 P.2d at 351, 66 Cal.Rptr. at 703. While we doubt that a state law's definition of severability can undercut the policy of § 204(a), that question is not before us because we are convinced that no such division of the agreement can occur in this case.

After examining the terms of the contract, it is clear to us that the agreement between the parties embodied only one exchange and one agreement. Under the terms of the oral contract and the terms of the unsigned agreement that supposedly memorialized the oral agreement, Pinckney agreed, in return for VKV's efforts and $5,000, to transfer the exclusive right to prepare the video and to divide the royalties. The only consideration VKV could receive was the transfer and a portion of the royalties that flowed from the transfer. None of the terms of the oral contract or the alleged memorialization of that agreement ever referred to any agreement to pay a finder's fee. VKV's efforts to obtain financing were the consideration furnished by VKV to obtain the transfer and a share of the royalties. The district court correctly concluded that § 204(a) rendered the entire oral agreement unenforceable.

### 2. Memorialization of Oral Argument

■■■ VKV next contends that the correspondence between the parties memorialized the oral agreement. If an oral transfer of a copyright license is later confirmed in writing, the transfer is valid. *See Eden Toys,* 697 F.2d at 36; 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 10.03[A] at 10–34 (1988).

The letter that VKV contends memorialized the agreement between the parties was written by Marc Bailin, an attorney for Pinckney, to Eddie Kritzer. The letter states:

> We revised your agreement and submit copies herewith for your review. Neither Callan Pinckney, nor Mitch Douglas and [sic] Stephen Sultan of ICM have had a chance to review this draft, so I must reserve their right to comment. However, in the interest of time (and in light of the pending MCA deal) I wanted to get this to you as quickly as possible.
>
> Please call if you have problems; if everything is okay, we will arrange to get executed copies to you promptly.
>
> Thank you for your cooperation and congratulations on landing the deal.

Not surprisingly, in arguing that this letter memorialized the agreement, VKV emphasizes the last paragraph. The first paragraph, however, undercuts the hint of finality that emanates from the last. In that first paragraph Bailin expressly reserved his client's right to comment on the agreement. This reservation communicates a clear intent not to be bound by the terms of the agreement. Consequently, we hold that the letter and the accompanying agreement were not a memorialization of the oral agreement.

■■ A similar conclusion was reached in *Mellencamp v. Riva Music, Ltd.,* 698 F.Supp. 1154 (S.D.N.Y.1988). There, Mellencamp argued that a series of letters between his agent and the defendants' attorneys memorialized an oral agreement between the parties. These letters contained provisions reserving the right of the defendant to make any changes in the agreement. Based on these clauses and the fact that the agreements were labelled as "proposals" or "drafts," the court concluded that there was a "mutual lack of intent to be bound absent an executed contract." *Id.* at 1162–65.

Further, we note that Bailin alone could not memorialize the agreement between the parties even if he intended to do so, absent Pinckney's signature on the letter or some express authorization from her. *See, e.g., Blanton v. Womancare, Inc.,* 38 Cal.3d 396, 407, 696 P.2d 645, 652, 212 Cal.Rptr. 151, 158 (1985).

### B. *Tortious Breach of Contract*

■■ VKV's second line of argument is that Pinckney tortiously breached the contract between the parties. In order to prove this cause of action the plaintiff must show that the breaching party acted in bad faith and without probable cause in denying the existence of a contract for sale.

*Seaman's Direct Buying Service, Inc. v. Standard Oil Co.*, 36 Cal.3d 752, 770, 686 P.2d 1158, 1167, 206 Cal.Rptr. 354, 363 (1984).

As a necessary prerequisite to establishing a tortious breach, it is necessary to prove, as in the case of an ordinary breach, the existence of an enforceable agreement. VKV cannot satisfy this prerequisite. The right to sue for tortious breach of contract under state law in this case is equivalent to suing for breach of contract for the failure to transfer exclusive rights under § 106 of the Copyright Act. *See Harper & Row, Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985).

## C. *Fraud*

VKV's final argument is that the district court improperly held that its claim for fraud was preempted by the Copyright Act. The district court held that VKV's fraud claim was substantially equivalent to the rights afforded to owners and exclusive licensees of copyrighted works under the Copyright Act, and therefore preempted. *See* 17 U.S.C. § 301(a) (1982).[3]

We believe that the district court carried preemption too far in this instance. Tort and contract remedies differ as do their histories and theories. This court has devised a two-part test to determine preemption's reach. *See Del Madera Properties v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir.1987). First, it must be determined whether Pinckney's book *Callenetics* is subject to the Copyright Act. *See id.* Both parties agree that *Callenetics* satisfies this requirement. Second, it must be determined if the state law claim is "equivalent to any of the exclusive rights within the general scope of copyright as specified by" 17 U.S.C. § 106 (1982). 17 U.S.C. § 301(a) (1982). Section 106 grants the copyright owner exclusive rights of reproduction, production of derivative works,

distribution, and display. *See* § 106. Thus, "[t]o survive preemption, the state cause of action must protect rights which are qualitatively different from copyright rights.... The state claim must have an 'extra element' which changes the nature of the action." *Del Madera Properties*, 820 F.2d at 977 (quoting *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F.Supp. 1523, 1535 (S.D.N.Y.1985)). Applying this test, two district courts have held that common law fraud is not preempted by § 301 because the element of misrepresentation is present. *See Tracy v. Skate Key, Inc.*, 697 F.Supp. 748, 751 (S.D.N.Y.1988); *Brignoli v. Balch Hardy & Scheinman, Inc.*, 645 F.Supp. 1201, 1205 (S.D.N.Y.1986). This conclusion appears to be consistent with congressional intent. *See* H.R.Rep. No. 94–1476, 94th Cong., 2d Sess. 132, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5748 ("[T]he general laws of defamation and fraud, would remain unaffected as long as the causes of action contain elements ... that are different in kind from copyright infringement.").

In its complaint, VKV does allege the element of misrepresentation that distinguishes this claim from one based on copyright. Under California law misrepresentation is a necessary element of any fraud claim. *See, e.g., Molko v. Holy Spirit Assn.*, 46 Cal.3d 1092, 1108, 762 P.2d 46, 53, 252 Cal.Rptr. 122, 129 (in bank), *modified*, 47 Cal.3d 470a (1988). VKV alleges that Pinckney intentionally misrepresented its intent to perform the contract. This is not substantially equivalent to a claim for copyright infringement.

VKV made no unjust enrichment claim. *See Del Madera*, 820 F.2d at 977. Therefore, we express no opinion with respect to any such claim.

AFFIRMED in part and REVERSED in part.

---

**3.** The statute provides, in pertinent part:
[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 ... and come within the subject matter of copyright as specified by sections 102 and 103 ... are governed exclusively by this title....