Filed 7/28/21  Retro Video v. Direct Holdings Americas CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RETRO VIDEO, INC.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>DIRECT HOLDINGS AMERICAS, INC., et al.,<br><br>Defendants and Respondents. | B309882<br><br>(Los Angeles County<br>Super. Ct. No. 20STCV06971) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rupert A. Byrdsong, Judge.  Reversed and remanded with directions.

Law Offices of Neil J. Fraser, Neil J. Fraser and James C. Carr for Plaintiff and Appellant.

Dentons US, Jason R. Scheiderer, Samantha Fahr, and Katherine R. McMorrow for Defendants and Respondents.

———————————————

Retro Video, Inc. (Retro Video) is in the business of licensing the rights to show publicly vintage video and film clips on behalf of the owners of the underlying footage from which the clips are derived. Retro Video alleges it licensed certain clips to respondent Direct Holdings Americas, Inc. (DHA) and Mosaic Media Investment Partners LLC (MMIP) for their inclusion in infomercials promoting Time Life (TL) Music compilations associated with particular genres or decades. According to Retro Video, its license agreements with DHA and MMIP allowed these clips to be used only in connection with specified music collections during the license terms, and the agreements did not permit DHA or MMIP to stream the clips on any media platform other than the TL Music website. Retro Video claims that DHA and MMIP—either directly or through their affiliates—violated these restrictions by streaming the clips on other media platforms, showing them to the public after the license terms had expired, and using them to promote music compilations that were not authorized by the licenses.

Retro Video filed suit against DHA, MMIP, several of their respective officers and directors, an entity that negotiated the licenses on behalf of DHA and MMIP, and the principals of that negotiating entity (collectively, respondents) for fraud and deceit, fraudulent concealment, civil conspiracy, breach of contract, breach of the implied covenant of good faith and fair dealing, intentional misrepresentation, negligent misrepresentation, unjust enrichment, constructive trust, and an accounting. The trial court thereafter sustained respondents' general demurrer to the complaint without leave to amend and dismissed the action with prejudice on the grounds the action is time-barred; Retro Video failed to plead sufficient facts to state causes of action for

2

fraud and deceit, fraudulent concealment, civil conspiracy, intentional misrepresentation, negligent misrepresentation, unjust enrichment, constructive trust, and an accounting; Retro Video's contract-based causes of action against all respondents other than DHA fail because the complaint did not plead Retro Video was in privity of contract with those respondents; and all causes of action are preempted by the federal Copyright Act.

On appeal, we reject respondents' argument that Retro Video failed to allege sufficient facts to state its fraud and deceit, fraudulent concealment, and intentional misrepresentation causes of action, along with their challenge to Retro Video's other causes of action that are predicated on DHA's and MMIP's alleged misrepresentations—the causes of action for negligent misrepresentation, unjust enrichment, constructive trust, and an accounting. We also conclude that Retro Video's breach of contract cause of action is preempted by federal copyright law because the clips come within the scope of copyright protection and that cause of action asserts a right equivalent to the exclusive rights protected by the copyright statutory scheme, and that Retro Video has failed to overcome the presumption of correctness accorded to the trial court's conclusion that the breach of the implied covenant of good faith and fair dealing cause of action is preempted. We, however, reject respondents' contention that Retro Video's other claims are preempted. Lastly, we conclude that because respondents' statute of limitations defense targets only portions of Retro Video's remaining causes of action, sustaining a general demurrer on that defense was error.

3

We thus reverse the trial court's order of dismissal, remand the matter to the trial court, and instruct it to vacate its order sustaining the demurrer without leave to amend and enter a new order:  (a) sustaining the demurrer without leave to amend as to (i) the breach of contract cause of action, and (ii) the breach of the implied covenant of good faith and fair dealing cause of action; and (b) overruling the remainder of respondents' general demurrer.

## FACTUAL AND PROCEDURAL BACKGROUND

We summarize only those facts pertinent to this appeal.

1.    ***Retro Video's complaint***

On February 19, 2020, Retro Video, on behalf of itself and as the successor in interest of Research Video, Inc. (Research Video), filed a complaint against DHA, which is registered and authorized to do business in California as Direct Holdings Global LLC (DHG); MMIP; Universal Media, Inc. (UMI); Christopher Hearing (Hearing); Theodore A. MacKinney (MacKinney); Kenneth Friedli (Friedli); Kelley Shine (Shine); Lisa Hollett (Hollett); Gary Newman (Newman); John Paige (Paige); and Eric Kulberg (Kulberg).  The complaint alleges the following causes of action:  (1) fraud and deceit; (2) fraudulent concealment; (3) civil conspiracy; (4) breach of contract; (5) breach of the implied covenant of good faith and fair dealing; (6) intentional misrepresentation; (7) negligent misrepresentation; (8) unjust enrichment; (9) constructive trust; and (10) an accounting.[1]

---

[1] The remainder of this section summarizes the pertinent allegations in the complaint.  For the purposes of the appeal, we

4

Retro Video "is engaged in the business of licensing video and film footage clips for fees for commercial use by others . . . . on behalf of the owners of the materials . . . ." Under Retro Video's contractual agreements with the footage's owners, "[o]wnership of the original programming from which the footage clips derive remains with the owners; however, [Retro Video] has specific authorization from the owners of the materials to enforce the terms and conditions of any licensing agreement and/or seek damages for breach of any licensing agreement . . . ." Further, Retro Video's contracts with the owners of the clips entitle Retro Video to "an equal percentage share of the revenue generated by Retro [Video] through [its] placement of clips with customers . . . through license agreements."

DHA acquired TL as a subsidiary in late 2003 or early 2004, "and, effective August 24, 2006, the entity known as TL was merged into and became part of DHG and thereafter operated under the corporate aegis of . . . DHA." MMIP acquired DHA in 2012.

Retro Video and its predecessor in interest, Research Video, have licensed,[2] and Retro Video continues to license, to DHA and MMIP "video and film footage clips for use in infomercial

---

assume the truth of these allegations. (See Standard of Review, *post*.)

[2] At an unspecified point in time during or after 2001, Retro Video purchased all of Research Video's assets, including Research Video's "right to enforce any and all legal claims Research [Video] may have against [respondents] herein arising as a result of [respondents'] business dealings with Research [Video] before, during and after said corporation's acquisition by . . . Retro [Video]."

advertising and promotion of [an] extensive library of music compilation compact discs, marketed to the general public under the brand name" TL Music.[3]  The clips licensed "are video/film footage of various music performance excerpts which directly correspond to and showcase the artists and tracks on a multitude of compact disc collections compiled and sold to the public by way of direct response advertising . . . ."  The TL Music infomercials "aired on television and streamed on internet sites and platforms . . . ."  Retro Video "was and is paid a fixed sum per licensed clip [that is] set forth in each license agreement . . . ."

Each license was negotiated in Los Angeles and expressly limited the use of the clips identified therein for a particular named project, "each of which is a [TL] exclusive compact disc music compilation comprising multiple discs entitled in such a manner as to identify music genre or decade, for example 'Country Music of Your Life', 'Heart of Classic Rock', 'Pop Memories of the '60s' and 'Romancing the '70s.' "  (Italics omitted.)  Each license contained "defined limitations on the media outlets and platforms upon which [respondents] are authorized to place the infomercials containing [Retro Video's] licensed materials."  From December 13, 2011 onward, the parties to the licenses agreed that "internet streaming use of

_____

[3]  Respondents assert that "DHA entered into the contracts at issue" and "[n]one of the other [respondents] did."  The complaint, however, avers that Retro Video or its predecessor in interest, Research Video, issued the licenses at issue to DHA *and MMIP*.  On demurrer, we must assume the truth of this allegation.  (See Standard of Review, *post*.)

6

[Retro Video's] clips would be restricted to 'Internet Streaming on [the TL] Music website only.' "[4]  (Italics omitted.)

"During some or all of the time period of the acts complained of herein," Hearing was the chief executive officer and president of DHA and a director of that entity; Friedli was the secretary, the chief financial officer, and a director of DHA; MacKinney was the chief financial officer of MMIP, and the secretary, the chief financial officer, and a chief operations officer of DHA; Newman was the vice-president of DHA; Hollett was a director of production for DHA and DHG; and Shine was a director of production for DHA.  These six respondents were "personally involved in authorizing . . . the licensing of clips for infomercials from [Retro Video.]"  Respondents Hearing, Friedli, MacKinney, Newman, and Hollett "executed some of the licenses and license renewals in issue herein . . . ."

UMI is owned and operated by Paige and Kulberg.  Paige, Kulberg, and UMI "are the agents of . . . DHA and MMIP and act[ ] on behalf of said entities in the acquisition of licenses for film and video clips from [Retro Video] for use in infomercials promoting TL music collections on various media outlets and platforms as is alleged" in the complaint.

Hearing, Friedli, MacKinney, Newman, Hollett, Shine, Paige, and Kulberg "participated in the creation and pursuit of a strategy which knowingly and willfully used [Retro Video's] clips

---

[4]  Retro Video acknowledges in its complaint that several licenses it had issued after December 2011 "inadvertently . . . appeared to permit unlimited internet streaming."  Retro Video avers that this term was "not representative of" the media terms included in licenses Retro Video issued in or after December 2011.

to advertise [TL] music CD collections when [respondents] knew, or reasonably should have known, use of the clips was unauthorized because the license agreements for the projects . . . were . . . expired, or the license agreements expressly forbad[e] the use of [Retro Video's] clips on media streaming platforms other than the [TL] Music website, or were not under license at all, having been obtained . . . for use in other projects pursuant to licenses specific to said other projects." "[T]he acquisition of TL Music by . . . MMIP, who also acquired . . . DHA at the same time, authorizing . . . DHA to continue to manage, control, oversee and do business under the TL Music Collection banner, as of July 2012 coincided with the beginning of a pattern of behavior by . . . MMIP, through DHA, in their business dealings with [Retro Video] which exhibits a conscious, willing and intentional conspiracy by the individual [respondents] herein, acting as agents for their respective corporate entities, MMIP, DHA and UMI designed to defraud and damage [Retro Video] by the unauthorized use of [Retro Video's] materials provided under license, which acts have continued up to and including the end of 2019 and [are] continuing."

For instance, DHA and MMIP "placed infomercials on new and emerging media platforms such as Roku and U-Verse" without obtaining "a new or renewed license agreement with [Retro Video] before" doing so; DHA and MMIP began streaming the infomercials "on a continual basis on Roku in October 2013 and on AT&T U-Verse in February 2014.[5]  Respondents also

---

[5] The complaint alleges that "Roku . . . uses an Over-The-Top electronic device to stream Video-On-Demand . . . media to end-users over the internet from a branded streaming video application," and that "AT&T's U-Verse subscription service . . .

provided TL Music infomercials to their affiliates without informing them of the license expiration dates or limitations on use, which resulted in the unauthorized placement of the clips at issue on platforms such as YouTube after the relevant licenses had expired. Further, respondents made "repeated requests during years 2011 through 2019 . . . for an expansion of internet streaming usage rights, all of which were rejected by [Retro Video] on the terms offered . . . ."

Respondents "knew their decision to use [Retro Video's] licensed materials in such an unlawful and unauthorized manner would damage [Retro Video] by diminishing the value of the footage, which, in part, was established by its rarity." Respondents also knew that Retro Video "would have charged a much higher per-clip licensing fee had [it] known or been told by [respondents] that their clips were to be used, and were in fact used, . . . on media platforms and outlets substantially more extensive than the limitations imposed by the licenses."

Retro Video did not discover any of the violations of the license terms alleged in the complaint until "late-August 2017" when Retro Video "inadvertently stumbled" upon a TL music infomercial on YouTube that "had been uploaded . . . by or on behalf of . . . DHA[ and] MMIP . . . to promote and generate sales of a TL music collection." Although Retro Video sent a cease-and-desist letter to DHA in November 2017,[6] TL Music infomercials

_____

streams the programming offered on the linear schedules of its [Internet Protocol TV]-streaming channels upon-request to end-users through a proprietary set-top box requiring high-speed internet connectivity . . . ."

[6] According to the complaint, the letter stated that "subsequent to the first discovery of unauthorized YouTube

9

containing clips issued under license by Retro Video continued to appear on unauthorized media platforms and/or after license expiration without the knowledge or consent of Retro Video.

Paragraph 57 of the complaint identifies each of the licenses Retro Video claims to have been violated. Each of paragraph 57's 48 subparts provides the TL Music project subject to the license, the number of clips licensed in connection with the project, the license term, the start/end date of the license, the renewal periods (if applicable), the media terms of the license, and the nature of the alleged violation (i.e., streaming the clips on platforms other than the TL Music website, showing clips in an infomercial for a project for which the underlying license had expired, or including clips in infomercials for projects that are not authorized by Retro Video's licenses).[7] For example, Retro Video licensed 18 clips in connection with the "We Love the Nightlife" project from March 2, 2012 to August 1, 2013, and the TL Music infomercial associated with this project appeared on Roku between October 2013 and November 2017 and on the TL Music website between September 2, 2013 and March 13, 2016.

---

uploads of licensed materials in infomercials in August 2017, [Retro Video] discovered further unauthorized and unlawful uploads to other non-permitted media platforms such as Vimeo, U-Verse and Roku," and that Retro Video "considered each such placement to be a material breach of the license terms issued for each project so shown on streaming media."

[7] Paragraph 57 indicates that several clips appeared in projects for which no license had been issued. For instance, three video clips appeared in infomercials for one of two versions of TL Music's the "Golden Age of Pop" project, even though Retro Video had not permitted those three clips to be used in connection with that project.

(Boldface, underscoring, & some capitalization omitted.) The earliest license term identified in paragraph 57 was from September 13, 2002 to September 12, 2003, and the latest license term was from December 27, 2019 to December 26, 2020. The earliest alleged license violations occurred from January 2013 to September 2017, and the latest license violations identified in paragraph 57 transpired from December 27, 2019 to the date of filing of the complaint (i.e., February 19, 2020).

## 2. *Respondents' joint demurrer*

Respondents filed a joint demurrer, arguing that each cause of action is time-barred, otherwise fails to state a claim, and is preempted by federal copyright law.[8] With respect to its statute of limitations defense, respondents argued that all of Retro Video's claims accrued no later than 2014 (i.e., when TL Music infomercials with Retro Video's clips first appeared on U-Verse), and that Retro Video's fraud causes of action are barred by Code of Civil Procedure section 338, subdivision (d)'s three-year limitations period and its contract causes of action are

---

[8] In the memorandum of points and authorities accompanying their demurrer, respondents argued that Retro Video's claim for punitive damages should be dismissed because Retro Video failed to state fraud claims and punitive damages are not available for breach of contract. This request to dismiss Retro Video's prayer for punitive damages is procedurally improper. (See *Ramsden v. Western Union* (1977) 71 Cal.App.3d 873, 883 ["[I]t has been held that a prayer for relief is not subject to demurrer and the fact that a plaintiff has requested exemplary damages to which he may not be entitled does not affect the sufficiency of his complaint."].) In any event, respondents do not reiterate this contention on appeal.

11

barred by Code of Civil Procedure section 337's four-year statute of limitations. Retro Video opposed respondents' demurrer, and respondents filed a reply to Retro Video's opposition.

## 3. *The trial court's ruling on the demurrer*

After hearing respondents' demurrer, the trial court issued an order sustaining the demurrer without leave to amend and dismissing the action in its entirety. The order was prepared by defense counsel and recited the following conclusions: (1) each cause of action is time-barred and Retro Video has not pleaded, and could not plead, facts to support application of the delayed discovery rule; (2) Retro Video failed to "specifically plead all elements . . . required" to state its fraud and misrepresentation-related causes of action, which the court identified as the causes of action for fraud and deceit, fraudulent concealment, civil conspiracy, intentional misrepresentation, negligent misrepresentation, unjust enrichment, constructive trust, and an accounting; (3) all causes of action against respondents other than DHA fail because Retro Video has not pleaded, and cannot plead, privity of contract with those respondents and because Retro Video has not pleaded, and cannot plead, tortious conduct by any respondent; (4) Retro Video has failed to allege facts sufficient to state claims for constructive trust and an accounting; and (5) Retro Video's causes of action are preempted by the federal Copyright Act. Apart from simply listing these determinations, the court did not articulate its reasoning for these rulings.

Retro Video timely appealed the trial court's order dismissing the action.[9]

## STANDARD OF REVIEW

In their notice of demurrer and in the demurrer itself, respondents intimated they intended to level both a general and a special demurrer against all causes of action. Nevertheless, because respondents demurred on the grounds of lack of subject matter jurisdiction (i.e., by claiming that Retro Video's causes of action were preempted) and failure to state a claim, they raised only a general demurrer to the complaint.[10]

---

[9] The order did not specify whether the action was dismissed with or without prejudice. Concurrent with the issuance of that order, the trial court entered a minute order stating the complaint was dismissed without prejudice. Eight days later, the trial court issued another minute order correcting its prior ruling to indicate the court dismissed the complaint with prejudice.

[10] (See Factual and Procedural Background, part 2, *ante*; *Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1420–1421 (*Holiday Matinee, Inc.*) ["A general demurrer is appropriate where the complaint 'does not state facts sufficient to constitute a cause of action.' [Citation.] . . . [¶] [A] demurrer [for lack of subject matter jurisdiction] 'is functionally similar to a demurrer for failure to state a cause of action, and therefore is deemed a "general demurrer." [Citation.]' [Citation.] [¶] . . . [¶] 'A general demurrer will lie where the complaint "has included allegations that *clearly* disclose some defense or bar to recovery." [Citation.]' [Citation.]"]; *Benitez v. Williams* (2013) 219 Cal.App.4th 270, 275 [indicating that a state court lacks subject matter jurisdiction over a claim if copyright law confers upon federal courts exclusive jurisdiction thereover].)

13

"The function of a demurrer is to test the sufficiency of the complaint as a matter of law, and it raises only a question of law. [Citations.] On a question of law, we apply a de novo standard of review on appeal." (*Holiday Matinee*, *supra*, 118 Cal.App.4th at p. 1420.) " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.]' [Citation.]"[11] (*Holiday Matinee*, at pp. 1421.)

[11] In conjunction with their demurrer, respondents requested judicial notice of a document purporting to be one of Retro Video's license agreements with DHA. There is no indication the trial court ruled on this request for judicial notice. More importantly, respondents' request relied upon Evidence Code section 452, subdivision (a) and Evidence Code section 453, neither of which establishes that this document is a proper subject of judicial notice. (See Evid. Code, § 452, subd. (a) ["Judicial notice may be taken of the following matters to the extent that they are not embraced within Section 451: [¶] (a) The decisional, constitutional, and statutory law of any state of the United States and the resolutions and private acts of the Congress of the United States and of the Legislature of this state."]; Evid. Code, § 453 [prescribing the conditions under which "[t]he trial court shall take judicial notice of any matter specified in Section 452"].) Further, notwithstanding respondents' argument to the contrary, *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, does not support their request for judicial notice. (See *Scott*, at pp. 746, 752–753 [taking judicial notice of a contract between a bank and *a government agency* as an official act of the executive branch under Evid. Code, § 452, subd. (c) and as " '[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy' " under Evid. Code, § 452, subd. (h)

" '[I]t is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.]' [Citations.]" (*Franklin v. The Monadnock Co.* (2007) 151 Cal.App.4th 252, 257.) " 'And when [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse.' [Citations.]" (*Sanowicz v. Bacal* (2015) 234 Cal.App.4th 1027, 1035.)

## DISCUSSION

On appeal, the parties disagree on whether Retro Video has adequately pleaded its fraud-related causes of action and its other claims that are predicated on DHA's and MMIP's misrepresentations, Retro Video's causes of action are preempted by the federal Copyright Act, and Retro Video's causes of action are barred by the applicable statutes of limitation. As discussed in further detail below, we conclude that Retro Video adequately alleged its fraud-based causes of action and its other misrepresentation-based claims; Retro Video's fourth cause of action for breach of contract is preempted by federal copyright law; Retro Video has failed to show the trial court erred in ruling that the fifth cause of action for breach of the implied covenant of good faith and fair dealing is preempted; Retro Video's remaining causes of action are not preempted; and respondents' statute of limitations defense is not dispositive of the entirety of any cause of action and thus not subject to a general demurrer.

---

because the contract was posted on the agency's website].) Accordingly, we disregard this document, along with respondents' factual assertions that are predicated on this document.

15

## A. Retro Video Adequately Pleads Its Fraud-Related Causes of Action and Its Other Misrepresentation-Based Claims

Retro Video's first cause of action for fraud and deceit, second cause of action for fraudulent concealment, and sixth cause of action for intentional misrepresentation are all species of the tort of deceit.  (See 34A Cal.Jur.3d (2016) Fraud & Deceit, §§ 9, 38 [fraud and deceit, and fraudulent concealment]; *Manderville v. PCG&S Group, Inc.* (2007) 146 Cal.App.4th 1486, 1497–1498 & fn. 4 [intentional misrepresentation].)  The essential elements of this tort are:  " ' "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." ' [Citation.]" (*Thrifty Payless, Inc. v. The Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1239 (*Thrifty Payless, Inc.*).)

"Each element of a fraud claim must be pleaded with specificity.  [Citation.]  'The specificity requirement means a plaintiff must allege facts showing how, when, where, to whom, and by what means the representations were made, and, in the case of a corporate defendant, the plaintiff must allege the names of the persons who made the representations, their authority to speak on behalf of the corporation, to whom they spoke, what they said or wrote, and when the representation was made.' [Citation.] . . . The specificity requirement serves two purposes: 'to apprise the defendant of the specific grounds for the charge and enable the court to determine whether there is any basis for

16

the cause of action.' [Citation.]"[12]  (*Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 1008.)

Respondents challenge Retro Video's "fraud-related claims."[13]  Specifically, they contend that "Retro[ Video's] complaint failed to allege an actionable misrepresentation," Retro Video cannot state a claim for fraudulent concealment because respondents had no duty to disclose any fact, and Retro Video has not alleged the element of "justifiable reliance."  We disagree.

---

[12] Respondents apparently argue that Retro Video must meet this heightened pleading standard because Retro Video was capable of discovering the alleged falsity of the representations at issue, given that the TL Music infomercials were publicly disseminated on television and on internet streaming platforms. Because we ultimately conclude that Retro Video has satisfied this standard with regard to the elements disputed on appeal, we need not address whether a relaxed pleading standard is also available to Retro Video.  Further, insofar as respondents contend that their public dissemination of the infomercials establishes that Retro Video failed to state a claim for fraudulent concealment, we reject that argument.  (See *Vega v. Jones, Day, Reavis & Pogue* (2004) 121 Cal.App.4th 282, 295 (*Vega*) ["[T]he contention that publicly available information cannot form the basis for a concealment claim is mistaken.  The mere fact that information exists somewhere in the public domain is by no means conclusive."].)

[13] With the exception of the cause of action for fraudulent concealment, respondents do not identify which causes of action they consider to be "fraud-related claims."  Nonetheless, given the elements they have challenged on appeal and their use of the label "fraud-related claims[,]" it is apparent respondents are referring at least to the complaint's causes of action for fraud and deceit, fraudulent concealment, and intentional misrepresentation.

17

First, respondents argue that "Retro [Video] failed to plead the name of any person making the supposed misrepresentations, nor any medium by which they were made, nor the date of the representation, nor any other of the information required to put [respondents] on notice."  To the contrary, the complaint contains allegations identifying which respondents executed certain licenses, when they executed these licenses, and their authority to do so.

For instance, Retro Video alleges that "[d]uring some or all of the time period of the acts complained of herein," MacKinney was a chief financial officer of MMIP and a secretary, chief financial officer, and chief operations officer of DHA who was "responsible for the multi-channel television and digital streaming strategy of DHA," and that he signed several licenses on behalf of DHA, including the " 'Oldies But Goodies' " agreement (which he executed on April 12, 2017 and January 5, 2018) and the " 'Time Life Presents the 60's' " agreement (which he executed on August 22, 2017).  (Italics omitted.)  Retro Video also alleges that each of those licenses authorized use of the clips for only specified periods of time and allowed for "internet streaming . . . on [the TL] Music Website Only," and that DHA violated those restrictions.  (Italics omitted.)  Further, by signing these licenses, MacKinney promised that DHA would adhere to the licenses' restrictions on the use of the clips.  (See 34A Cal.Jur.3d, *supra*, Fraud & Deceit, § 35 [observing that a representation can give rise to both deceit claims (by virtue of a promissory fraud theory) and contract claims].)  We believe that these allegations are sufficiently detailed to provide respondents with adequate notice to defend

18

against Retro Video's fraud claims and for us to assess the fraud-related causes of action.

Respondents further contend Retro Video cannot proceed on a fraudulent concealment theory because DHA and MMIP were under no duty to disclose any facts to Retro Video.[14]  As set forth above, by entering into contracts that restricted the time and manner in which the film and video clips could be used, DHA and MMIP represented they would adhere to those limitations.  Yet, Retro Video maintains that at the time they made these representations, DHA and MMIP had no intention of complying with the licenses' restrictions on dissemination, and that they intended to permit:  The infomercials to be streamed on platforms other than the TL Music website, the clips to be used in connection with projects unauthorized by the licenses, and the clips to be used after the relevant licenses had expired.  Indeed, Retro Video alleges in its complaint that "[i]n late 2010, . . . agents for . . . DHA [and] MMIP . . . began to press [Retro Video] for the rights by license to advertise the [TL] music collections online without restriction," and, after Retro Video "did not accede to th[is] request," DHA and MMIP later streamed infomercials on the other platforms anyway.  Under these circumstances, Retro Video has sufficiently alleged the "nondisclosure" element of its fraudulent concealment cause of action.  (See *Vega, supra*, 121 Cal.App.4th at p. 294 ["[A]ctive concealment may exist where a party '[w]hile under no duty to speak, nevertheless does so, but

---

[14]  As we noted earlier, although respondents claim that DHA was the only respondent that was a party to the licenses in question, we must assume the truth of the complaint's allegation that MMIP was a party to several of them.  (See fn. 3 & accompanying text, *ante*.)

19

does not speak honestly or makes misleading statements or suppresses facts which materially qualify those stated.' "].)

Lastly, respondents contend that Retro Video failed to plead justifiable reliance because it "does not allege that it took any particular action in reliance," and Retro Video continued to enter into "nearly identical licenses" for the clips after it discovered their unauthorized use. Respondents ignore the complaint's allegations that Retro Video "would have charged a much higher per-clip licensing fee" had it been aware that DHA and MMIP intended to breach the licenses' restrictions on use. Furthermore, because the complaint does not identify the fees charged for licenses issued after Retro Video discovered the falsity of DHA's and MMIP's representations, we will not discount or ignore Retro Video's allegation that it would have charged a higher fee for the clips had it been aware of DHA's and MMIP's scheme. Because this is not " ' "the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether [Retro Video's] reliance [was] reasonable is a question of fact." ' [Citation.]" (See *Thrifty Payless, Inc.*, *supra*, 218 Cal.App.4th at p. 1239.)

Having rejected respondents' challenges to the first cause of action for fraud and deceit, the second cause of action for fraudulent concealment, and the sixth cause of action for intentional misrepresentation, we conclude the trial court erred in sustaining the demurrer as to these claims. (See *Pack v. Kings County Human Services Agency* (2001) 89 Cal.App.4th 821, 826, fn. 5 (*Pack*) [" 'Although it is the appellant's task to show error, there is a corresponding obligation on the part of the respondent to aid the appellate court in sustaining the judgment. "[I]t is as much the duty of the respondent to assist the [appellate] court

20

upon the appeal as it is to properly present a case in the first instance, in the court below." [Citations.]' [Citation.]"].)

With regard to Retro Video's other causes of action, respondents' briefing suggests they believe that (a) Retro Video's fourth cause of action for breach of contract and fifth cause of action for breach of the implied covenant of good faith and fair dealing fail against all respondents who are not parties to the licenses at issue, and (b) Retro Video's seventh cause of action for negligent misrepresentation, eighth cause of action for unjust enrichment, ninth cause of action for constructive trust, and tenth cause of action for an accounting fail because the complaint does not "allege any specific misrepresentation (or other tort) made by any defendant, much less any specific defendant." ~(See RB 53.)~ We need not resolve their first contention because we have concluded that the two contract-based causes of action are preempted. (See Discussion, part B.1, *post*.) The second contention fails because, as we have explained in this section, Retro Video has adequately pleaded the misrepresentations forming the basis of their claims.

Additionally, Retro Video alleges a conspiracy cause of action. In particular, Retro Video avers that "[t]his conspiracy, carried out by the individual defendants on behalf of and at the instruction of . . . DHA[ and] MMIP . . . was designed to, and did, fraudulently deprive plaintiff of income from their business of clip licensing and diverted, and continues to divert, profits gathered by defendants from their unauthorized use, including conscious acts constituting *fraud, fraudulent concealment and intentional misrepresentation*." (Italics added.) It is thus apparent that Retro Video's civil conspiracy allegations complement its causes of action for fraud and deceit, fraudulent concealment, and

21

intentional misrepresentation. Accordingly, we do not treat the conspiracy count as a separate cause of action, but instead as a theory potentially allowing the imposition of vicarious liability on respondents who did not personally make the misrepresentation or false promise. (See *City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 199, 212 ["We construe the fifth count for fraud and the 10th count for conspiracy together as a single count for fraud."].)

Although Retro Video points out in its opening brief that it has invoked the doctrine of civil conspiracy to establish liability against respondents who did not personally make the misrepresentation or false promise, respondents do not claim the pleading fails to allege sufficient facts to impose liability via a conspiracy theory. We thus do not address this issue further. (See *Pack*, *supra*, 89 Cal.App.4th at p. 826, fn. 5.)

**B.** **Although Retro Video's Causes of Action for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Are Preempted by the Copyright Act, Retro Video's Other Causes of Action Survive Preemption**

"In addressing a question of preemption, we start with the presumption that the historic police powers of the states are not to be superseded by federal law unless there is a clear and manifest purpose on the part of Congress to do so." (*United States Golf Assn. v. Arroyo Software Corp.* (1999) 69 Cal.App.4th 607, 620; see *id.* at pp. 619–620 [invoking this principle in addressing the argument that a plaintiff's claims were preempted by the federal Copyright Act].) "[T]he party asserting preemption" has the "burden" of rebutting this presumption.

22

(See *Solorzano v. Superior Court* (1992) 10 Cal.App.4th 1135, 1139.)

Title 17 United States Code section 301(a) provides: "On or after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." (17 U.S.C. § 301(a).)

" '[F]or preemption to occur under [this provision of] the [Copyright] Act, two conditions must be met: first, the subject of the claim must be a work fixed in a tangible medium of expression and come within the subject matter or scope of copyright protection . . . , and second, the right asserted under state law must be equivalent to the exclusive rights contained in section 106.' [Citations.]" (See *Kabehie v. Zoland* (2002) 102 Cal.App.4th 513, 520 (*Kabehie*).)

Title 17 United States Code section 102(a)(6) extends copyright protection to "motion pictures and other audiovisual works" that are "fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." (See 17 U.S.C. § 102(a)(6).) Respondents posit that the "video and film footage clips" that Retro Video licenses constitute "motion pictures" and "audiovisual works" that come within the subject matter of

23

copyright for the purposes of title 17 United States Code section 102. Retro Video does not contest that assertion. Accordingly, Retro Video has in effect conceded that respondents have satisfied the first condition for preemption under title 17 United States Code section 301(a). (*Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 (*Rudick*) [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"].)

Regarding the second condition for preemption, " 'a right that is "equivalent to copyright" is one that is infringed by the mere act of reproduction, performance, distribution, or display.' [Citation.] If the act of reproduction, performance, distribution or display will *in itself* infringe the state-created right, then such right is preempted. [Citation.] . . . 'But if qualitatively other elements are required, instead of, or in addition to, the acts of reproduction, performance, distribution, or display, in order to constitute a state-created cause of action, then the right does not lie "within the general scope of copyright," and there is no preemption.' [Citation.] [¶] . . . 'In a proper case, the same conduct may support relief under multiple theories. Preemption law, however, requires analysis of each theory to determine whether it contains the necessary qualitatively different extra element distinguishing it from copyright protection.' [Citation.]" (*Kabehie, supra*, 102 Cal.App.4th at pp. 520–521.)

1.    *Retro Video's breach of contract and breach of the implied covenant of good faith and fair dealing claims are preempted*

Retro Video's fourth cause of action for breach contract fails this "extra element" test. In its complaint, Retro Video alleges

24

that DHA and MMIP violated the terms and conditions of Retro Video's licenses by disseminating (and, in some cases, allowing their affiliates to disseminate) infomercials containing video and film clips:  (a) on media streaming platforms other than the TL Music website; and/or (b) that pertain to (i) projects governed by licenses that had expired, or (ii) projects that were not authorized by the licenses associated with the clips at issue. In essence, Retro Video avers that DHA and MMIP violated its licenses' restrictions on the "public performance" of these video and film clips, which is an exclusive right contained in title 17 United States Code section 106.[15]  Because Retro Video's breach of contract cause of action is based on the "promise . . . simply to refrain from copying the material or infringing the rights protected by copyright," this claim does not satisfy the "extra element" test and is preempted by title 17 United States Code section 301(a).  (See *Kabehie*, *supra*, 102 Cal.App.4th at p. 526.)

Retro Video resists this conclusion, arguing that it "licensed clip footage in return for a promise of payment," and that "[t]he promise of payment provides the 'extra element' which changes the nature of an action . . . and thereby nullifies preemption."

---

[15]  (See 17 U.S.C. § 106(4) ["[T]he owner of copyright under this title has the exclusive rights to do and to authorize any of the following:  [¶] . . . [¶] [I]n the case of . . . motion pictures and other audiovisual works, to perform the copyrighted work publicly[.]"]; *id.*, § 101 ["To perform or display a work 'publicly' means [¶] . . . [¶] to transmit or otherwise communicate a performance or display of the work . . . to the public, by means of any device or process . . . ."]; *Disney Enterprises, Inc. v. VidAngel, Inc.* (C.D. Cal. 2019) 371 F.Supp.3d 708, 713, 718 [holding that a defendant publicly performed certain motion pictures by streaming them to its customers].)

We acknowledge that "a right to payment" is "[a] right that is qualitatively different from copyright" and that a contract claim premised on the breach of a promise to pay can survive preemption. (See *Kabehie, supra,* 102 Cal.App.4th at p. 528.) The breach of a promise to pay is not what Retro Video alleges. Instead, it complains of the unauthorized use of its video clips. Because Retro Video concedes that it was paid "a fixed sum per licensed clip set forth in each license," rather than a variable fee tied in some way to the extent to which the clips were disseminated, the complaint is not susceptible to Retro Video's description of its breach of contract claim.

Retro Video argues that it is without a remedy if its breach of contract claim is preempted. It reasons that it lacks standing to bring a copyright claim because the owners of the video and film clips at issue have retained the exclusive rights to that material. Whether Retro Video may recover under the federal Copyright Act, however, has no bearing on whether a claim satisfies the "extra element" test for copyright preemption. (See *Kabehie, supra,* 102 Cal.App.4th at p. 520; *ibid.* ["[A] state right [may be] preempted even if the state-created right is broader or narrower than the comparable federal right."]; *Sybersound Records, Inc. v. UAV Corp.* (9th Cir. 2008) 517 F.3d 1137, 1150–1151 [holding that state-law claims were preempted by the Copyright Act even though the plaintiff lacked standing to bring an infringement claim].)

Retro Video does not suggest in its appellate briefing how it could amend its breach of contract claim to avoid preemption. We, moreover, cannot discern any such amendment that would not change the theory of its contract claim. (See *Community Water Coalition v. Santa Cruz County Local Agency Formation*

26

*Com.* (2011) 200 Cal.App.4th 1317, 1329 ["It is the rule that when a trial court sustains a demurrer with leave to amend, the scope of the grant of leave is ordinarily a limited one. It gives the pleader an opportunity to cure the defects in the particular causes of action to which the demurrer was sustained, but that is all."].)

In order to state a breach of contract claim that would avoid federal copyright preemption, Retro Video would need to allege new facts establishing that DHA and/or MMIP breached a term of the licenses other than a restriction on the use of the video and film clips. (See *Kabehie, supra*, 102 Cal.App.4th at p. 528.) Such an amendment would not simply remedy a defect in its contract cause of action, it would constitute an entirely new factual theory that is absent from the complaint before us. Thus, the trial court did not abuse its discretion in declining to grant Retro Video leave to amend to replead its fourth cause of action for breach of contract.

Additionally, we acknowledge that some contractual promises may escape preemption because they are "qualitatively different from copyright," and that, in order to determine whether a contract claim is preempted, we must conduct "a fact-specific analysis of the particular promise alleged to have been breached and the particular right alleged to have been violated." (See *Kabehie, supra*, 102 Cal.App.4th at pp. 521, 528.) A claim for breach of the implied covenant of good faith and fair dealing relies on a contracting party's representation that it "will [not] do anything to destroy or injure the right of the other to receive the benefits of the contract." (See 14A Cal.Jur.3d (2016) Contracts, § 249.)

27

In connection with the preemption issue, Retro Video does not address its fifth cause of action specifically, and a fortiori, whether it has alleged an extra element defeating preemption of that cause of action.  Consequently, Retro Video has failed to overcome the presumption of correctness accorded to the trial court's ruling sustaining the demurrer without leave to amend as to Retro Video's claim for breach of the implied covenant of good faith and fair dealing.  (See *Yu v. University of La Verne* (2011) 196 Cal.App.4th 779, 787 [" ' "A judgment or order of the lower court is *presumed correct*.  All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' "]; *Needelman v. DeWolf Realty Co., Inc.* (2015) 239 Cal.App.4th 750, 762 ["It is not this court's role to construct arguments that would undermine the lower court's judgment and defeat the presumption of correctness.  Rather, an appellant is required to present a cognizable legal argument in support of reversal of the judgment and when the appellant fails to support an issue with pertinent or cognizable argument, 'it may be deemed abandoned and discussion by the reviewing court is unnecessary.'  [Citation.]"].)

2.      *Retro Video's fraud and other claims are not preempted*

" 'Under the extra element test, it is clear that federal copyright law does not preempt state causes of action alleging fraud . . . .  Fraud involves "the extra element of misrepresentation." [Citation.]' [Citation.]" (*Kabehie, supra*, 102 Cal.App.4th at p. 530, quoting *Gladstone v. Hillel* (1988) 203 Cal.App.3d 977, 987.)  In *Kabehie*, plaintiffs, producers of music cassettes, videotapes, and compact discs, brought, inter alia, a fraud cause of action against defendants from whom

28

plaintiffs had purchased exclusive rights, title, and interests in certain music albums. (See *Kabehie*, at p. 518.) The agreements also required the defendants to deliver the master recordings of the albums. (See *ibid.*) In derogation of their agreements, defendants themselves started producing, duplicating, advertising, and selling the "musical materials" covered by the agreements, and they did not deliver the master recordings. (See *ibid.*)

The *Kabehie* court rejected defendants' preemption defense to the fraud cause of action. (*Kabehie*, *supra*, 102 Cal.App.4th at pp. 529–530.) The court found the extra element defeating preemption in defendants' misrepresentation that they owned the interests in each of the musical works, promised to transfer the rights to the musical works, including the master recordings, to plaintiffs exclusively, and promised not to duplicate or sell the music in any form. (See *ibid.*) As the court concluded, defendants had "made the misrepresentations with the intent to defraud [plaintiffs]." (*Id.* at p. 530.)

The Ninth Circuit Court of Appeals has also held that "the element of misrepresentation" constitutes an " 'extra element' " that "distinguishes" a fraud claim "from one based on copyright" such that it "is not substantially equivalent to a claim for copyright infringement." (See *Valente-Kritzer Video v. Pinckney* (9th Cir. 1989) 881 F.2d 772, 776 (*Valente-Kritzer Video*).) There, the circuit court held that the Copyright Act did not preempt a fraud claim predicated on an "intentional[ ] misrepresent[ation of the defendants'] intent to perform [a] contract" obligating them to transfer to the plaintiff "the right to co-produce, distribute, and sell [a] videocassette" of a film. (See *id.* at pp. 773–774, 776.) The court observed that not preempting such a fraud claim

29

"appears to be consistent with congressional intent." (*Id*. at p. 776; *ibid.* [" '[T]he general laws of defamation and fraud, would remain unaffected as long as the causes of action contain elements . . . that are different in kind from copyright infringement[,]' " quoting H.R. Rep. No. 94–1476, 94th Cong., 2d Sess. 132, *reprinted in* 1976 U.S. Code Cong. & Admin. News 5659, 5748].)

Retro Video alleges the "extra element" of misrepresentation in its first cause of action for fraud and deceit, second cause of action for fraudulent concealment, and sixth cause of action for intentional misrepresentation. As we have described in Discussion, part A, *ante*, Retro Video's causes of action for fraud and deceit, fraudulent concealment, and intentional misrepresentation each rely on the theory that by executing the licenses in question, DHA and MMIP represented they would adhere to the licenses' limitations on the dissemination of the clips. Retro Video alleges that these representations were false when DHA and MMIP made them because these respondents intended (either directly, or in some cases, through their affiliates) to use the clips in connection with projects for which the licenses had expired, stream the clips on platforms other than the TL Music website, and include the clips in infomercials for projects that "were not under license at all" but had "been obtained by . . . DHA and/or MMIP for use in other projects pursuant to licenses specific to said other projects." Under *Kabehie* and *Valente-Kritzer Video*, these allegations are sufficient to defeat preemption under the federal Copyright Act.[16]

---

[16] Respondents claim that an unpublished federal district court decision "held fraud and misrepresentation causes of action preempted when the plaintiff failed to identify a

30

Respondents do not explain why the claim for negligent misrepresentation should be treated any differently than Retro Video's fraud claims, even though both types of claims are predicated on the same "extra element" of a misrepresentation. (See *Borman v. Brown* (2021) 59 Cal.App.5th 1048, 1060 [stating that an element of negligent misrepresentation is " 'the misrepresentation of a past or existing material fact' "].) Furthermore, as pleaded, the eighth cause of action for unjust enrichment, the ninth cause of action for constructive trust, and the 10th cause of action for an accounting are based on respondents' alleged "fraudulent" conduct. Respondents fail to explain why, notwithstanding the aforesaid allegations of fraud, the eighth, ninth, and 10th causes of action should be treated any differently than Retro Video's fraud and deceit, fraudulent concealment, and intentional misrepresentation claims.[17]

---

misrepresentation beyond unauthorized use of the work, as here." (Citing *McCormick v. Sony Pictures Entertainment* (C.D. Cal. Nov. 17, 2008) No. CV 07-05697 MMM (PLAx) [2008 WL 11336160, at p. *10].) Respondents' reliance on *McCormick* is unavailing because the plaintiff in that case did not allege the defendant had made any false promises to him at all; instead, the plaintiff claimed the defendant simply used his screenplay without authorization. (See *id.* at pp. *1, *10.)

[17] Indeed, Retro Video and respondents both seem to treat the complaint's causes of action as if they fall into two distinct categories: (1) contract claims, and (2) misrepresentation claims. As discussed in this section, we conclude that the second category (misrepresentation claims) is not preempted because the claims therein contain the extra element of misrepresentation.

Additionally, as we explained Discussion, part A, *ante*, we do not consider Retro Video's third cause of action for conspiracy to be a standalone claim, but rather a means to impose vicarious

31

In sum, although we do not disturb the trial court's rulings sustaining, without leave to amend, respondents' demurrer to the fourth cause of action for breach of contract and the fifth cause of action for breach of the implied covenant of good faith and fair dealing, the trial court erred in finding that Retro Video's other causes of action are preempted.

## C. Respondents' Statute of Limitations Defense Cannot Be Raised on Demurrer Because It Does Not Dispose of the Entirety of any Cause of Action

Respondents assert—and Retro Video does not dispute—that all of Retro Video's remaining causes of action are governed by Code of Civil Procedure section 338, subdivision (d)'s three-year statute of limitations.[18] (*Rudick*, *supra*, 41 Cal.App.5th at pp. 89–90.)

Code of Civil Procedure section 338, subdivision (d) provides that "[a]n action for relief on the ground of fraud or mistake" does not accrue "until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (See Code Civ. Proc., § 338, subd. (d).) As noted in our Factual and Procedural Background, part 1, *ante*, Retro Video alleges that

---

liability on certain respondents for the fraud and deceit, fraudulent concealment, and intentional misrepresentation causes of action.

[18] Because we have concluded Retro Video's breach of contract and breach of the implied covenant of good faith and fair dealing causes of action are preempted, we do not address whether the trial court erred in sustaining the demurrer on statute of limitations grounds as to these claims. (See Discussion, part B.1, *ante*.)

32

certain breaches of Retro Video's licenses occurred within the three-to-four-year period preceding the commencement of this action on February 19, 2020. In fact, several of the licenses in question did not even become operative until after February 19, 2017. It is therefore unsurprising that respondents argue that Retro Video's claims are "*partially* time-barred" and that "all fraud related claims that accrued prior to February 19, 2017 . . . are barred by the applicable statutes of limitations." (Italics added.)

"[A] general demurrer may not be sustained . . . as to a portion of a cause of action. [Citation.] . . . [D]efendants may attack any portion of a cause of action that is 'substantively defective on the face of the complaint . . . by filing a motion to strike.' [Citation.]" (See *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1167.) Respondents did not file a motion to strike. Accordingly, the trial court erred in sustaining the demurrer to Retro Video's remaining causes of action based on respondents' statute of limitations defense. (See *id.* at p. 1167, fn. 9 ["Because a demurrer may not be sustained as to a portion of a cause of action, we decline to address respondents' arguments that appellants' intentional misrepresentation, negligent misrepresentation, and promissory estoppel claims are *partially* time-barred."].)

## DISPOSITION

We reverse the trial court's judgment of dismissal, and remand with instructions to vacate its order sustaining the demurrer without leave to amend and issue a new order: (a) sustaining the demurrer without leave to amend as to (i) the complaint's fourth cause of action for breach of contract, and (ii) the complaint's fifth cause of action for breach of the implied covenant of good faith and fair dealing; and (b) overruling the remainder of the demurrer. Appellant Retro Video, Inc. is awarded its costs on appeal.

NOT TO BE PUBLISHED.


BENDIX, J.

We concur:



ROTHSCHILD, P. J.



CHANEY, J.

34